Daniel J. Weintraub – Bar #132111
James R. Selth – Bar #123420
**WEINTRAUB & SELTH, APC**
11766 Wilshire Boulevard, Suite 450
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: dan@wsrlaw.net

[Proposed] General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
LAUREL APPAREL GROUP, LLC, dba
BOYISH JEANS

# United States Bankruptcy Court

## Central District Of California – Los Angeles Division

| | |
|---|---|
| In re: | Case No. 2:22-bk-11974-BB |
| LAUREL APPAREL GROUP, LLC, dba BOYISH JEANS, | Chapter 11 – Subchapter V |
| | **MOTION FOR ORDER:** |
| Debtor and Debtor in Possession. | |

**1. APPROVING BIDDING PROCEDURES IN CONNECTION WITH PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE; AND**

**2. APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF UNEXPIRED COMMERCIAL LEASE AND EXECUTORY CONTRACTS**

**DECLARATION OF JORDAN NODARSE IN SUPPORT THEREOF**

Hearing
Date:    [TBD]
Time:    ___ a.m.
Place:   Courtroom 1539
            255 E. Temple St.
            Los Angeles, CA 90012

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHE PARTIES IN INTEREST:**

Laurel Apparel Group, LLC, dba Boyish Jeans, the debtor and debtor in possession herein ("Debtor"), in the above-caption Chapter 11 case hereby moves the Court  ("Motion"), for the entry of an order approving bid procedures ("Bid Procedures") in connection with the proposed sale of substantially all of the assets of the Debtor and assumption and assignment of Debtor's interest in the lease designated executory contracts identified in **Exhibit 3** attached to the *Declaration of Jordan Nodarse* ("Nodarse Declaration").  This Motion is brought on shortened time due to the fact that the Debtor is out of cash and is unable to continue in business.

The Debtor's most valuable asset is its brand, customer relationships and market position.  The Debtor is suffering deterioration to its brand due to its inability to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets.  If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income and the estate may become administratively insolvent.

By this Motion, the Debtor seeks pursuant to sections 105, 363, and 365 of the Bankruptcy Code, 6004-1 of the Local Bankruptcy Rules ("LBR") entry of the Bid Procedures Order in substantially the form attached to the *Nodarse Declaration* as **Exhibit 1**.

11345737 Canada, Inc. ("Buyer"), has executed a written Asset Purchase Agreement ("APA") and tendered its deposit to the Debtor to purchase the Debtor's intellectual property, goodwill and customer relationships and inventory ("Assets"), assets more particularly identified in the APA.  The Assets do not include the Debtor's cash, accounts receivable or avoiding power claims.   The Buyer also has the option, but no obligation, to request that the Debtor assume and assign its rights and interests in that certain lease ("Lease") of the real property located at 1638 East 23rd Street Los Angeles, California 90011-1804 ("Premises"), between the Debtor and CC 1 Property, LLC ("Lessor"), and the Debtor's other executory contracts (the Lease and any

assumed executory contracts are referred to herein as the "Assumed Contracts"), for the sum of Two Hundred Fifty Dollars ($250,000), plus such amount as is necessary to cure and defaults under the Assumed Contracts (the "Purchase Price"), free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code.

A true and correct copy of the *Asset and Purchase Agreement* ("APA") is attached as **Exhibit 2** to the *Nodarse Declaration*. This Purchase Price, which is subject to overbid, is sufficient to pay the Debtor's two secured creditors[1] Hilldun Corporation (currently approximately $6,360.00)[2] and the Small Business Administration (approximately $160,000.00), in full, along with anticipated administrative claims and priority claims, and provide a significant distribution to Debtor's general unsecured creditors.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Authorities appended hereto, the *Nodarse Declaration*, all pleadings and records on file in this case and such argument and additional evidence as may be offered by Debtor's counsel at the hearing on this Motion.

**WHEREFORE** the Debtor respectfully requests that the Court enter an Order in substantially the same form as the Bid Procedures Order attached to the *Nodarse Declaration* as **Exhibit 1**.

Dated: April 11, 2022                    **WEINTRAUB & SELTH, APC**

                              By:       */s/ Daniel J. Weintraub*
                                          Daniel J. Weintraub
                                          James R. Selth
                                          [Proposed] General Bankruptcy Counsel for
                                          Chapter 11 Debtor and Debtor in Possession,
                                          LAUREL APPAREL GROUP, LLC, dba
                                          BOYISH JEANS

---

[1] LG Funding, LLC ("LG") entered into merchant cash advance agreement with the Debtor on or about January 25, 2022 and presumably asserts a blanket security interest in Debtor's assets based upon the Debtor's review of the loan agreement. However, LG did not file its financing statement until March 16, 2022 and accordingly, lien is avoidable as a preference under 11 U.S.C. §§ 547(b)(4)(A) and 547(e)(2)(B). LG is therefore treated as a general unsecured creditor by the Debtor in this case.

[2] Hilldun is the Debtor's factor. As of the date of this Motion, Hilldun is owed approximately $6,360 and has a first priority lien in accounts receivable in the approximate amount of $141,166.00.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor has determined that it is in the best interest of the estate and its creditors to immediately hold an auction, overseen by the Bankruptcy Court, of substantially all of its assets. The assets to be sold are generally described as the Debtor's intellectual property, goodwill and customer relationships and inventory ("Assets") and are particularly identified in the *Asset and Purchase Agreement* ("APA") is attached as **Exhibit 2** to the *Nodarse Declaration*. The Assets do not include the Debtor's cash, accounts receivable or avoiding power claims, all of which are specifically excluded from the Sale and shall remain property of the Estate.

Pursuant to the APA, the Buyer also has the option, but not the obligation, to request that the Debtor assume and assign its rights and interests in that certain lease ("Lease") of the real property located at 1638 East 23rd Street Los Angeles, California 90011-1804 ("Premises"), between the Debtor and CC 1 Property, LLC ("Lessor"), and the Debtor's other executory contracts (the Lease and any assumed executory contracts are referred to herein as the "Assumed Contracts").

The purchase price for the Assets is Two Hundred Fifty Dollars ($250,000), plus such amount as is necessary to cure and defaults under the Assumed Contracts (the "Purchase Price"). The sale is to be free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code. The Debtor believes that such a sale will provide the best opportunity to maximize the value of the Estate, and the only way in which unsecured creditors will receive a distribution.

This Motion is brought on shortened time due to the fact that the Debtor is out of cash and is unable to continue in business due to the fact that the factor is collecting all receivables but making no advances to the Debtor, and therefore the Debtor is unable to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets. While the Debtor has approximately $161,139.00 in accounts receivable, after payment of Hilldun (currently approximately $6,360.00) and the SBA (approximately $160,000.00), the estate may well be administratively insolvent if the sale does not immediately

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

close.

The Debtor's most valuable asset is its brand, customer relationships and market position. The Debtor is suffering deterioration to its brand due to its inability to continue ordinary course business operations.   If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income.

Buyer has been designated to serve as the stalking horse bidder at the auction, ensuring a bidding floor that will provide the estate with an estimated $250,000.00 (plus cure costs, if any) in Sale proceeds for the sole and exclusive benefit of the Debtor's creditors.  In order to maximize the sale price, the Sale will be subject to overbid.

The Debtor seeks to implement certain bid procedures to manage the sale process (the "Bid Procedures").   By this Motion, the Debtor seeks pursuant to sections 105, 363, and 365 of the Bankruptcy Code, entry of the Bid Procedures Order in substantially the form attached hereto as **Exhibit 1**.

### A.    General Background

As set forth in the *Nodarse Declaration*, the Debtor is a California limited liability company formed in 2017 and is owned by Jordan Nodarse (41.67%) and Brama s.r.l (58.33%). Mr. Nodarse is the manager of the Debtor.  The Debtor licenses its clothing designs throughout the world and operates an on-line shopping website www.boyishjeans.com.

### B.    Brief Background Summary

The Debtor sought bankruptcy relief after the Covid-19 pandemic severely impacted its business affairs and it fell behind with several vendors.  In addition, despite being in a credit position with Hildun Corporation, its factor, and having invoices available for factoring, Hildun recently refused to make further advances under the factoring line causing the Debtor into crisis mode as the Debtor is out of cash.   The Debtor's members have also recently had several points of disagreement among themselves.   As a result, the Debtor decided its best course of action was to sell its assets to maximize the return for creditors.

//

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

The Debtor's assets consist of those items listed in its *Schedule B* filed with the Bankruptcy Court as well as its interest in the Lease and certain executory contract identified in its *Schedule G*. Any party wishing to receive copies of the Lease, executory contracts or other information should contact the Debtor's counsel.

The Debtor's members are well established in the apparel industry and have reached out to several parties who might be interested in acquiring the Assets, including several large retailers who often acquire assets and brands in bankruptcy.  In addition, Debtor's counsel has made similar inquiries and introductions.  While many parties have expressed some interest, only Buyer has stepped forward with a written letter of intent and now has executed the APA and made its Sale deposit to counsel's trust account.  The Debtor and its counsel are continuing to promote the Sale and seek other interested buyers and will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest.

## II.

## PROPOSED BID PROCEDURES

In order to maximize the value of the Assets, and expedite the closing of the sale, the Debtor wishes to set bid procedures now to manage the sales process and overbids.

 The Bid Procedures for which approval is sought by this Motion are summarized as follows:

### A.    Qualified Overbids

The Debtor shall consider only qualified bids for the Assets ("Qualified Bid").  In order for a proposed bid to be deemed a Qualified Bid, a proposed bid must meet each of the criteria set forth in the following subparagraphs 1 through 8:

1. Timing.

   a) The hearing on the Debtor's Motion Approving the Sale of Substantially All Assets of the Estate Free and Clear Of Liens, Claims, Interests and Encumbrances Pursuant To 11 U.S.C. §363(B)(1) And (F)(2); and (2) Authorizing Assumption and Assignment of Unexpired Lease and Executory Contracts shall be held on **May 4, 2022,** at 10:00 a.m. PST, or such other date as the Court may designate;

   b) All of the documents and information required to be submitted pursuant to subparagraphs 2 through 6 below must be received by Debtor's bankruptcy

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD. SUITE 1170
LOS ANGELES, CA 90025

counsel, Daniel J. Weintraub of Weintraub & Selth APC, ("WS") no later than 5:00 p.m., PST, **April 25, 2022** (the "Bid Deadline").  Unless a bid containing all of the required documents and information is submitted by the Bid Deadline, it will not constitute a Qualified Bid; and

c) The auction shall take place via Zoom on **May 2, 2022,** at 10:00 a.m. PST and shall be conducted by the Debtor's counsel.

2.    Initial Bid Amount.   Bidding increments will be $10,000.00.

3.    Break Up Fee.  The Break-Up Fee payable to Buyer in the event it is not the successful buyer at the Auction shall be $12,500.  Buyer's initial bid is $250,000.00.  Thus, in order to be a Qualified Bid, the overbid must be not less than cash in the amount of **$272,500.00**.

4.    Form and Content of Bid.  In order to be a Qualified Overbid, any overbid must include an executed asset purchase agreement in a form identical or substantially similar to the APA and which is acceptable to the Debtor in its sole and absolute discretion.  Qualified Overbidders are encouraged, but not required to submit an asset purchase agreement in form and substance the same as the APA (other than the name of the bidder, and with a purchase price that satisfies the conditions of paragraph 3 above).  Without limiting the foregoing, the overbid may not include any representations, warranties or conditions to closing (including due diligence or financing contingencies) other than those set forth in the APA with Buyer.

5.    Offers Irrevocable.  In order to be a Qualified Overbid, any overbid must contain a letter from the overbidder stating that the overbid will remain open and irrevocable until an order by the Court approving the sale of the Assets (an "Approval Order") has been entered by the Clerk of the Court.

6.    Deposits.  In order to be a Qualified Bid, and participate at the Auction, a bid must be accompanied by a deposit in the form of a cashiers' check or wire transfer of immediately available funds to Weintraub & Selth, APC ("WS") in the amount of $22,500.00 (the "Deposit").   WS shall hold all Deposits in a segregated account, subject to Court order, to defray all costs, expenses and damages arising as a result of the failure of any winning bidder to close for any reason other than the default of the Debtor.  WS shall return a Deposit to a bidder as soon as practicable after the earlier to occur of (i) the Debtor's delivery of notice that a bid is not a Qualified Bid, and (ii) entry of an Approval Order providing for the sale of the Assets to an entity other than the bidder.

7.    Ability of Bidder to Consummate Transaction.  In order to be a Qualified Bid, all bidders must include written financial evidence, satisfactory to the Debtor, demonstrating that the bidder has the ability to consummate the transaction.  Such financial evidence may include, among other things, background reports and/or references, financing commitments, financial statements, income statements, tax returns, balance sheets, annual reports and bank statements.  The financial information must include adequate assurance of such bidder's ability to perform under any Assumed Contract, and such financial information may be shared with counter party to the Assumed Conttract.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

3886.02            MOTION FOR ORDER APPROVING BIDDING PROCEDURES

8.    <u>Closing</u>.  Subject to the terms and conditions hereof, the closing of the sale of the Assets (the "<u>Closing</u>") shall take place within 5 days of the entry of a Bankruptcy Court order approving the Sale.

**B.    Auction**

If a Qualified Bid is received, Debtor's counsel will conduct an auction ("<u>Auction</u>") for the Assets.  Such Auction, subject to Court approval, shall take place via Zoom and conducted by WS on **May 2, 2022** at 10:00 a.m., or such date as is continued by Debtor, subject to Court approval. Only those who have submitted a Qualified Bid will be eligible to participate in the Auction.

Upon conclusion of the Auction, Debtor's counsel shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale proceeds, including those factors affecting the speed and certainty of consummating the Sale, and (ii) identify the highest and otherwise best offer (the "<u>Successful Bid</u>").   At the Sale Hearing, Debtor's counsel shall present to the Bankruptcy Court for approval the Successful Bid and any backup bids.

**C.    Forfeit of Deposit**

 If the person or entity submitting the Successful Bid ("<u>Successful Bidder</u>"), thereafter fails to close escrow ("<u>Close</u>"), and the failure to Close is for any reason other than the default of the Debtor, the Debtor may terminate the Sale by providing written notice to the Successful Bidder and the Successful Bidder shall forfeit its Deposit.

**D.    Back-Up Bid**

By participating in the Auction, each bidder agrees that, if the Successful Bidder fails to close and the failure to Close is a default under the Agreement, the bidder that submitted the last bid at the Auction, prior to the Successful Bid (the "<u>Back-Up Bid</u>"), shall purchase the Assets for the amount of the Back-Up Bid and Close the purchase and sale in accordance with the form of the Agreement it submitted to become a Qualified Bid.

**E.    Return of Good Faith Deposit**

The Deposit of all bidders shall be held in trust by Debtor's counsel WS, but shall not become property of the Debtor's estate.  WS shall hold all Deposits in a segregated account, subject to Court order, to defray all costs, expenses and damages arising as a result of the failure of any winning bidder to close for any reason other than the default of the Debtor.  WS shall return a

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1    Deposit to a bidder as soon as practicable after the earlier to occur of (i) the Debtor's delivery of

2    notice that a bid is not a Qualified Bid, and (ii) entry of an Approval Order providing for the sale of

3    the Assets to an entity other than the bidder.

4                                                **III.**

5    **PROCEDURE FOR ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS**

6              In the event that Buyer or any Qualified Overbidder(s) desire that the Debtor assume and

7    assign to the Buyer or other Successful Bidder any Assumed Contract and to ensure the orderly

8    assignment of such Assumed Contract(s) and the resolution of objections thereto, the Debtor

9    seeks approval of assignment procedures ("Assignment Procedures") as follows:

10        (a)  **Notice of Assumed Lease**. Within **ten (10) days** of the filing of this Motion, the
             Debtor will serve by overnight carrier and first-class mail a notice (the "Assignment
11           Notice") on Lessor, the counter party to any executory contract proposed to be
             assumed and their counsel, if known to Debtor.  The Assignment Notice shall include
12           (i) the name of the counterparty, (ii) the specific contract or lease being assumed
             ("Assumed Contract"), (iii) the premises relating to the Lease or the name of the
13           executory contract, and (iv) the cure amount asserted by the Debtor that is necessary
             to cure any default under the Assumed Contract pursuant to section 365 of the
14           Bankruptcy Code (the "Cure Amount") in a form as follows:

15

16

| Lessor | Description of Lease | Address of Premises | Cure Amount |
|--------|---------------------|---------------------|-------------|
| CC 1 Property, LLC | Commercial Lease Dated July 21, 2020 | 1638 East 23rd Street Los Angeles, CA 90011-1804 | $_____ [3] |

17

18

19        The Assignment Notice shall also include (i) a description of the Buyer and a
20        statement as to the Buyer's ability to perform the obligations under the Assumed
          Contract ("Buyer's Adequate Assurance"), (ii) the date of the Objection Deadline
21        (defined below), and (iii) the **May 4 2022,** Sale Hearing.

22        (b) **Initial Objections**. To the extent that any counterparty wishes to object to any
          matter pertaining to the assumption and assignment of the Assumed Contract,
23        including, without limitation, Buyer's Adequate Assurance or the Cure Amount
          designated in the Assignment Notice, then such counter party must file a written
24        objection (the "Contract Objection") with the Court no later than **April 20, 2022,** (the
          "Objection Deadline"), and simultaneously serve such Lease Objection on Debtor's
25        counsel, Weintraub & Selth, APC, 11766 Wilshire Blvd., Suite 450, Los Angeles,

26

27

28   _____
     [3]  Net of security deposit which Lessor may apply following the entry of an order authorizing the assumption
     and assignment of the Lease.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

CA 90025 (Attn: Daniel J. Weintraub) or to dan@wsrlaw.net), so that it is **actually received** by the Objection Deadline.

To the extent that any such counter party does not timely serve a Contract Objection as set forth above, all such counter parties will be deemed to have (i) consented to the assumption and assignment of the Assumed Contract; (ii) agreed that the Buyer has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount, if any; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

(c) **Resolution and Adjudication of Objections**. Upon filing of an objection by any counterparty, the Debtor and/or Buyer will contact such party to attempt to consensually resolve any timely served objection.  If the Debtor and/or the Buyer are unable to resolve an objection in response to the Assignment Notice, (i) to the extent such objections relate to the adequate assurance of future performance by the Buyer or Successful Bidder (each an "Adequate Assurance Objection"), such objections will be heard at the Sale Hearing or (ii) to the extent such objections relate to a Cure Amount, such objections will be heard at the Sale Hearing or such other date to be scheduled by the Court at the Sale Hearing.  In the event an objection relates **solely** as to a Cure Amount, then the counter party to the Assumed Contract shall be deemed to consent to the assumption of the Assumed Contract and its assignment to the Buyer, notwithstanding such objection. Payment of the Cure Amount shall be deemed to discharge the obligation of the Debtor and the Buyer to: (i) cure any defaults under the Assumed Contract; and (ii) compensate, or provide adequate assurance that the Debtor will promptly compensate for any actual pecuniary loss resulting from any default thereunder.

The Buyer or the Successful Bidder shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of the Lease.

After the assignment of the Assumed Contract, the Debtor shall be relieved of all liability accruing or arising thereafter pursuant to 11 U.S.C. § 365(k).

**IV.**

**LEGAL ARGUMENT**

A proposed use, sale or lease of property under Section 363(b) is appropriate if some "articulated business justification" exists for the transaction.  *See* In re Continental Air Lines, Inc., 780 F. 2d 1223, 1226 (5th Cir. 1986); In re McClung, 789 F. 2d 386, 390 (6th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Walter, 83 B.R. 14, 19-20 (9th Cir. BAP 1988).

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

Applying § 363 of the Bankruptcy Code, numerous courts have approved overbid procedures and break-up fees in advance of a debtor's sale motion. *See* In re Crown Corp. 679 F.2d 774, 775 (9th Cir. 1982) (noting that district court required specified minimum overbid amounts, deposits, and the form of purchase agreement to be used by bidders); In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1980) (noting that the bankruptcy court had entered an order approving potential break-up fees and required that overbids be made in specified minimum increments with deposits); In re Table Talk, Inc., 53 B.R. 937, 939 (Bankr. D. Mass 1985) (noting that Section 363 requires notice and a hearing prior to the establishment of bidding procedures).

Courts have made clear that a debtor's business judgment is entitled to great deference with respect to the procedures to be used in selling assets of the estate. *See* In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor-in-possession are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"), *appeal dismissed*, 3 F. 3d 49 (2d Cir. 1993); In re 995 Fifth Ave. Assocs. L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

In the present case, as discussed below, sound business justifications support the proposed Bid Procedures.

### A.    The Proposed Bid Procedures Will Maximize Value Received For The Assets

Generally, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the "proffered purchase price is the highest and best offer." In re Integrated Resource Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y 1992) *aff'd*, 147 B.R. 650 ( S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); In re Atlanta Packaging Products, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. *See* Integrated Resources, *supra*, 147 B.R. at 659 (such procedures should "encourage bidding and maximize the value of the debtors assets"); In

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1  re Financial News Network, Inc., 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for

2  the disposition of assets…[should] provide an adequate basis for comparison of offers, and

3  provide for a fair and efficient resolution of bankrupt estates"), *appeal dismissed*, 931 F.2d 217

4  (2d Cir. 1991).

5    The proposed Bid Procedures are intended to increase the likelihood that the Debtor will

6  receive the best offer for the Assets.  First, pre-approval of the bidding procedures will provide

7  interested parties with notice of the specific bidding procedures authorized by this Court, and the

8  opportunity to competitively bid.  Second, pre-approval of the rules of the proposed sale will

9  ensure fair comparability of competing bids.  Third, by open solicitation of higher bids, the

10  Debtor is making every effort to maximize the value of the Assets to the estate and its creditors.

11  **V.**

12  <u>**CONCLUSION**</u>

13    **WHEREFORE** the Debtor respectfully requests that the Court enter an Order approving

14  the Bid Procedures Order attached to the *Nodarse Declaration* as **Exhibit 1** and the proposed

15  procedure for assumption and assignment of unexpired leases and executory contracts.

17           Respectfully submitted,

18  Dated:  April 11, 2022     **WEINTRAUB & SELTH, APC**

19         By:  _____*/s/ Daniel J. Weintraub*_____

20          Daniel J. Weintraub

        James R. Selth

21          [Proposed] General Bankruptcy Counsel for

        Chapter 11 Debtor and Debtor in Possession,

22          LAUREL APPAREL GROUP, LLC, dba

        BOYISH JEANS

3886.02  MOTION FOR ORDER APPROVING BIDDING PROCEDURES

**DECLARATION OF JORDAN NODARSE**

I, Jordan Nodarse, declare as follows:

1.       I am an individual over the age of eighteen and the Manager of Laurel Apparel Group, LLC, dba Boyish Jeans, the Chapter 11 Debtor and Debtor in Possession (the "Debtor") herein.  Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.       I make this declaration in support of the *Motion for Order Approving Bidding Procedures in Connection With Proposed Sale of Substantially All Assets of the Estate; and Approving Procedures for Assumption and Assignment of Unexpired Commercial Lease and Executory Contracts* (the "Motion") to which this declaration is annexed.  Unless otherwise defined, all capitalized terms herein shall have the same meaning as in the Application.

3.       On April 7, 2022 ("Petition Date"), Debtor commenced the instant bankruptcy case ("Case") by filing a Petition under Chapter 11 of the United States Bankruptcy Code.

4.       Attached hereto as **Exhibit 1** is a proposed Bid Procedures Order.

5.       Attached hereto as **Exhibit 2** is an Asset and Purchase Agreement (APA") between the Debtor and 11345737 Canada, Inc ("Buyer").

6.       Attached hereto as **Exhibit 3** is a list of the unexpired leases and executory contracts of the Debtor.

7.       The Debtor is a California limited liability company formed in 2017 and is owned by me (41.67%) and Brama s.r.l (58.33%).  The Debtor licenses its clothing designs throughout the world and operates an on-line shopping website www.boyishjeans.com.

8.       The Debtor has determined that it is in the best interest of the estate and its creditors to immediately hold an auction, overseen by the Bankruptcy Court, of substantially all of its assets. The assets to be sold are generally described as the Debtor's intellectual property, goodwill and customer relationships and inventory ("Assets") and are particularly identified in the APA.  The Assets do not include the Debtor's cash, accounts receivable or avoiding power claims, all of which are specifically excluded from the Sale and shall remain property of the Estate.

//

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

9.      Pursuant to the APA, the Buyer also has the option, but not the obligation, to request that the Debtor assume and assign its rights and interests in that certain lease ("Lease") of the real property located at 1638 East 23rd Street Los Angeles, California 90011-1804 ("Premises"), between the Debtor and CC 1 Property, LLC ("Lessor"), and the Debtor's other executory contracts (the Lease and any assumed executory contracts are referred to herein as the "Assumed Contracts").

10.     The purchase price for the Assets is Two Hundred Fifty Dollars ($250,000), plus such amount as is necessary to cure and defaults under the Assumed Contracts (the "Purchase Price").  The sale is to be free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code.  The Debtor believes that such a sale will provide the best opportunity to maximize the value of the Estate, and the only way in which unsecured creditors will receive a distribution.

11.     This Motion is brought on shortened time due to the fact that the Debtor is out of cash and is unable to continue in business due to the fact that the factor is collecting all receivables but making no advances to the Debtor, and therefore the Debtor is unable to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets.  While the Debtor has approximately $161,139.00 in accounts receivable, after payment of Hilldun (currently approximately $6,360.00) and the SBA (approximately $160,000.00), the estate may well be administratively insolvent if the sale does not immediately close.  The Debtor's most valuable asset is its brand, customer relationships and market position.  The Debtor is suffering deterioration to its brand due to its inability to continue ordinary course business operations.   If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income.

12.     Buyer has been designated to serve as the stalking horse bidder at the auction, ensuring a bidding floor that will provide the estate with an estimated $250,000.00 (plus cure costs, if any) in Sale proceeds for the sole and exclusive benefit of the Debtor's creditors.  In order to maximize the sale price, the Sale will be subject to overbid.

//

13.    The Debtor has executed the written APA with 11345737 Canada, Inc. ("Buyer") attached hereto as **Exhibit 2**, which has tendered its deposit to the Debtor to purchase the Assets.

14.    The Debtor sought bankruptcy relief for several reasons.  First and foremost, the Covid-19 pandemic severely impacted the Debtor's business affairs and it fell behind with several vendors.  More recently, despite being in a credit position with Hilldun Corporation, our factor, and having invoices available for factoring, Hilldun refused to make further advances under its factoring line and the Debtor is out of cash.  I have also had several points of disagreement with Mr. Braglia, my business partner at Brama s.r.l..  As a result, the Debtor decided its best course of action was to sell its assets to maximize the return for creditors.

15.    The Debtor's members are well established in the apparel industry and have reached out to several parties who might be interested in acquiring the Assets, including several large retailers who often acquire assets and brands in bankruptcy.  In addition, Debtor's counsel has made similar inquiries and introductions.  While many parties have expressed some interest, only Buyer has stepped forward with a written Letter of Intent and now has executed the APA and made its Sale deposit to counsel's trust account.  The Debtor and its counsel are continuing to promote the Sale and seek other interested buyers and will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest.

16.    Buyer and/or its affiliated entities have previously purchased goods from the Debtor.  Neither I, the Debtor, nor any of the Debtor's members or managers, have any other relationship with Buyer or Buyer's owners and officers other than as disclosed herein.  Buyer is in the business of buying and selling clothing and is looking to acquire and develop its own brand.

17.    I believe that the proposed Bid Procedures are intended to increase the likelihood that the Debtor will receive the best offer for the Assets.  First, pre-approval of the bidding procedures will provide interested parties with notice of the specific bidding procedures authorized by this Court, and the opportunity to competitively bid.  Second, pre-approval of the rules of the proposed sale will ensure fair comparability of competing bids.  Third, by open solicitation of higher bids, the Debtor is making every effort to maximize the value of the Assets to the estate and its creditors.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

18.     The Debtor has no operating capital or cash with which to resume operations or pay administrative rent or other administrative expenses.  Thus, I believe a sale must close quickly in order to preserve the value of the Assets.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 11th day of April 2022, at Los Angeles, California.

_____
JORDAN NODARSE

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD, SUITE 1170
LOS ANGELES, CA 90025

3886.02

.

# EXHIBIT "1"

1  Daniel J. Weintraub – Bar #132111
   James R. Selth – Bar #123420
2  **WEINTRAUB & SELTH, APC**
3  11766 Wilshire Boulevard, Suite 450
   Los Angeles, CA 90025
4  Telephone: (310) 207-1494
   Facsimile: (310) 442-0660
5  Email: dan@wsrlaw.net

6
   [Proposed] General Bankruptcy Counsel to
7  Chapter 11 Debtor and Debtor in Possession,
   LAUREL APPAREL GROUP, LLC, dba
8  BOYISH JEANS

9

10              **UNITED STATES BANKRUPTCY COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

12  In re:                              Case No. 2:22-bk-11974-BB

13  LAUREL APPAREL GROUP, LLC, dba       Chapter 11 – Subchapter V
    BOYISH JEANS,
14                                       **ORDER**

15      Debtor and Debtor in Possession.    1.  **APPROVING BIDDING PROCEDURES**
16                                              **IN CONNECTION WITH PROPOSED**
                                                **SALE OF SUBSTANTIALLY ALL**
17                                              **ASSETS OF THE ESTATE; AND**

18                                          2.  **APPROVING PROCEDURES FOR**
                                                **ASSUMPTION AND ASSIGNMENT OF**
19                                              **UNEXPIRED COMMERCIAL LEASE**
                                                **AND EXECUTORY CONTRACTS**
20

21

22                                       Hearing
                                         Date:   [TBD]
23                                       Time:   ___ a.m.
                                         Place:  Courtroom 1539
24                                               255 E. Temple St.
                                                 Los Angeles, CA 90012
25

26

27          The Court held a hearing at the above referenced date, time and place on the *Motion For*

28  *Order (1) Approving Bidding Procedures in Connection with Proposed Sale of Substantially All*

*Assets of the Estate; and (2) Approving Procedures for Assumption and Assignment of Unexpired Commercial Lease and Executory Contracts* (the "Motion"), filed by Laurel Apparel Group, LLC, a California limited liability company doing business as "Boyish Jeans", Debtor and Debtor in Possession herein ("Debtor").  Appearances were made as noted on the record.

Upon consideration of the Motion, the Memorandum of Points and Authorities appended to the Motion and all exhibits attached thereto, the *Declaration of Jordan Nodarse* filed in support of the Motion, the statements of counsel on the record of the Court, and having made certain findings of fact and reached certain conclusions of law as set forth on the record at the hearing on the Motion, and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1.    The Motion is hereby **GRANTED**.

2.    The Bid Procedures attached to this Order as **Exhibit 1** are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings relating to the purchase of the Debtor's business assets and property.

3.    The procedure for assumption and assignment of Assumed Contracts is hereby approved.

4.    The hearing for the Court to consider approval of the sale shall be set for **May 4, 2022 at 10:00 a.m.** (the "Sale Hearing").

5.    As set forth in the Bid Procedures, if there are one or more Qualified Overbids, the Debtor shall hold an auction on May 2, 2022, at 10:00 a.m. PST, which will be conducted by the Debtor's counsel.

###

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

# EXHIBIT 1

# BID PROCEDURES

Set forth below are the bid procedures (the "Bid Procedures") for the sale of substantially all of the assets of Laurel Apparel Group, LLC, a California limited liability company doing business as "Boyish Jeans" and the debtor and debtor in possession herein ("Debtor"). The Assets being acquired and the terms and conditions of the sale are further described in Asset Purchase Agreement ("APA") with 11345737 Canada, Inc. ("Buyer"), a copy of which is attached as **Exhibit 2** to the *Motion For Order (1) Approving Bidding Procedures in Connection with Proposed Sale of Substantially All Assets of the Estate; and (2) Approving Procedures for Assumption and Assignment of Unexpired Commercial Lease and Executory Contracts* (the "Motion"), filed by the Debtor.

The sale of the Assets to Buyer is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

### A.    Qualified Overbids

The Debtor shall consider only qualified bids for the Assets ("Qualified Bid"). In order for a proposed bid to be deemed a Qualified Bid, a proposed bid must meet each of the criteria set forth in the following subparagraphs 1 through 8:

1.    Timing.

   a)   The hearing on the Debtor's Motion Approving the Sale of Substantially All Assets of the Estate Free and Clear Of Liens, Claims, Interests and Encumbrances Pursuant To 11 U.S.C. §363(B)(1) And (F)(2); and (2) Authorizing Assumption and Assignment of Unexpired Lease and Executory Contracts shall be held on **May 4, 2022,** at 10:00 a.m. PST, or such other date as the Court may designate ("Sale Hearing");

   b)   All of the documents and information required to be submitted pursuant to subparagraphs 2 through 6 below must be received by Debtor's bankruptcy counsel, Daniel J. Weintraub of Weintraub & Selth APC, ("WS") no later than 5:00 p.m., PST, **April 25, 2022** (the "Bid Deadline"). Unless a bid containing all of the required documents and information is submitted by the Bid Deadline, it will not constitute a Qualified Bid; and

   c)   The auction shall take place via Zoom on **May 2, 2022,** at 10:00 a.m. PST and shall be conducted by the Debtor's counsel.

2.    <u>Initial Bid Amount</u>.    Bidding increments will be $10,000.00.

3.    <u>Break Up Fee</u>.  The Break-Up Fee payable to Buyer in the event it is not the successful buyer at the Auction shall be $12,500.  Buyer's initial bid is $250,000.00.  Thus, in order to be a Qualified Bid, the overbid must be not less than cash in the amount of **$272,500.00**.

4.    <u>Form and Content of Bid</u>.  In order to be a Qualified Overbid, any overbid must include an executed asset purchase agreement in a form identical or substantially similar to the APA and which is acceptable to the Debtor in its sole and absolute discretion.  Qualified Overbidders are encouraged, but not required to submit an asset purchase agreement in form and substance the same as the APA (other than the name of the bidder, and with a purchase price that satisfies the conditions of paragraph 3 above).  Without limiting the foregoing, the overbid may not include any representations, warranties or conditions to closing (including due diligence or financing contingencies) other than those set forth in the APA with Buyer.

5.    <u>Offers Irrevocable</u>.  In order to be a Qualified Overbid, any overbid must contain a letter from the overbidder stating that the overbid will remain open and irrevocable until an order by the Court approving the sale of the Assets (an "<u>Approval Order</u>") has been entered by the Clerk of the Court.

6.    <u>Deposits</u>.  In order to be a Qualified Bid, and participate at the Auction, a bid must be accompanied by a deposit in the form of a cashiers' check or wire transfer of immediately available funds to Weintraub & Selth, APC ("<u>WS</u>") in the amount of $22,500.00 (the "<u>Deposit</u>").  WS shall hold all Deposits in a segregated account, subject to Court order, to defray all costs, expenses and damages arising as a result of the failure of any winning bidder to close for any reason other than the default of the Debtor.  WS shall return a Deposit to a bidder as soon as practicable after the earlier to occur of (i) the Debtor's delivery of notice that a bid is not a Qualified Bid, and (ii) entry of an Approval Order providing for the sale of the Assets to an entity other than the bidder.

7.    <u>Ability of Bidder to Consummate Transaction</u>.  In order to be a Qualified Bid, all bidders must include written financial evidence, satisfactory to the Debtor, demonstrating that the bidder has the ability to consummate the transaction.  Such financial evidence may include, among other things, background reports and/or references, financing commitments, financial statements, income statements, tax returns, balance sheets, annual reports and bank statements. The financial information must include adequate assurance of such bidder's ability to perform under any Assumed Contract, and such financial information may be shared with counter party to the Assumed Conttract.

8.    <u>Closing</u>.  Subject to the terms and conditions hereof, the closing of the sale of the Assets (the "<u>Closing</u>") shall take place within 5 days of the entry of a Bankruptcy Court order approving the Sale.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

**B.**        **Auction**

If a Qualified Bid is received, Debtor's counsel will conduct an auction ("<u>Auction</u>") for the Assets.  Such Auction, subject to Court approval, shall take place via Zoom and conducted by WS on **May 2, 2022,** at 10:00 a.m., or such date as is continued by Debtor, subject to Court approval.  Only those who have submitted a Qualified Bid will be eligible to participate in the Auction.

The Debtor may continue the Auction to a later date without further notice other than an announcement at the Auction.  At the commencement of the Auction, the Debtor shall announce which of the Qualifying Overbids is, in its determination, the highest and best offer.   In making this determination, the Debtor shall have the right to consider, among other things: (a) the number, type and nature of any changes to the APA requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the sale of the Assets to such bidder and the cost to the Debtor of such modifications or delay; (c) the likelihood of the bidder's ability to close a transaction and the timing thereof, and (d) the net benefit to the Debtor's estate.

Upon conclusion of the Auction, Debtor's counsel shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale proceeds, including those factors affecting the speed and certainty of consummating the Sale, and (ii) identify the highest and otherwise best offer (the "<u>Successful Bid</u>").   At the Sale Hearing, Debtor's counsel shall present to the Bankruptcy Court for approval the Successful Bid and any backup bids.

**C.**        **Forfeit of Deposit**

 If the person or entity submitting the Successful Bid ("<u>Successful Bidder</u>"), thereafter fails to close escrow ("<u>Close</u>"), and the failure to Close is for any reason other than the default of the Debtor, the Debtor may terminate the Sale by providing written notice to the Successful Bidder and the Successful Bidder shall forfeit its Deposit.

**D.**        **Back-Up Bid**

By participating in the Auction, each bidder agrees that, if the Successful Bidder fails to close and the failure to Close is a default under the Agreement, the bidder that submitted the last

bid at the Auction, prior to the Successful Bid (the "Back-Up Bid"), shall purchase the Assets for the amount of the Back-Up Bid and Close the purchase and sale in accordance with the form of the Agreement it submitted to become a Qualified Bid.

**E.      Return of Good Faith Deposit**

The Deposit of all bidders shall be held in trust by Debtor's counsel WS but shall not become property of the Debtor's estate.  WS shall hold all Deposits in a segregated account, subject to Court order, to defray all costs, expenses and damages arising as a result of the failure of any winning bidder to close for any reason other than the default of the Debtor.  WS shall return a Deposit to a bidder as soon as practicable after the earlier to occur of (i) the Debtor's delivery of notice that a bid is not a Qualified Bid, and (ii) entry of an Approval Order providing for the sale of the Assets to an entity other than the bidder.

**F.      Result If No Qualified Overbids**

If the Debtor determines that there are no Qualified Overbids, the Debtor shall move the Court at the Sale Hearing for authority to sell the Assets to 11345737 Canada, Inc. pursuant to the terms of the APA.

.

# EXHIBIT "2"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of April 5, 2022 by and between Laurel Apparel Group, LLC, dba Boyish Jeans, as the intended debtor and debtor in possession in a Chapter 11 bankruptcy case ("Debtor" or "Seller") to be filed on or about April 6, 2022 (the "Bankruptcy Case") before the United States Bankruptcy Court for the Central District of California, Los Angeles Division, United States Bankruptcy (the "Bankruptcy Court"), and 11345737 Canada, Inc., ("Buyer"). The Debtor and Buyer are together referred to hereinafter as the "Parties," and individually, as a "Party."

WHEREAS, the Debtor is in the business ("Business") of licensing its clothing designs throughout the world and operates an on-line shopping website www.boyishjeans.com.

WHEREAS, it is presently contemplated that the Debtor shall file a Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court on our about April 6, 2022, thereby commencing the Bankruptcy Case;

WHEREAS, the sole condition to the Debtor filing the Bankruptcy Case is the Perties executing the Agreement;

WHEREAS, Buyer has delivered to Seller its Letter of Intent ("LOI") dated as of March 18, 2022, a copy of which is attached hereto as **Exhibit 1**, whereby Buyer wishes to acquire those assets described in the LOI, subject only to the entry into a mutually acceptable Asset Purchase Agreement;

WHEREAS, Buyer wishes to purchase, and the Debtor wishes to sell, transfer, convey, assign and deliver to Buyer, all of the Assets (as defined in the LOI), free and clear of liens, claims, interests and encumbrances, and upon the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the Assets will be sold pursuant to a Sale Order (as hereinafter defined) of the Bankruptcy Court approving such sale under Section 363 of the Bankruptcy Code; and

WHEREAS, the obligations of the Parties under this Agreement are conditioned upon, among other things, the approval of the Bankruptcy Court in accordance with the terms hereof.

NOW THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.    ASSETS. Buyer shall purchase the tangible and intangible Assets belonging to the Debtor and/or in which the Debtor has any interest which are more

particularly described in the LOI, and including but not limited to all of the Debtor's inventory, goodwill, customer lists, company name, trade names, domain names, social media accounts, trademarks and other intellectual property held by the Debtor (but none of the Debtor's outstanding liabilities thereunder), books and records of the Debtor, certain contracts and any other tangible or intangible property used in the operation of the Debtor's business.

2.    ASSUMED CONTRACTS.  Within five (5) days of the filing of the Bankruptcy Case, Buyer shall advise Debtor in writing whether Buyer wishes to assume the Debtor's lease ("Lease") of the real property located at 1638 E. 23rd Street, Los Angeles, CA 90011or any other executory contracts, including the digital marketing contract with Divisa, Inc. ("Executory Contracts" and collectively with the Lease, an "Assumed Contract") of the Debtor.  In the event Buyer wishes to assume an Assumed Contract, Debtor shall seek approval from the Bankruptcy Court to assume and assign to Buyer such Assumed Contract(s) pursuant to 11 U.S.C. § 365, and to determine the amount of any "cure" payments, if any, required to be made in connection with the assumption of such Assumed Contract(s) ("Cure Amount"), so that the assumption and assignment of the Assumed Contracts to Buyer can be effectuated at or prior to the Closing Date.  Buyer understands that the Sale is subject to the Court's approval of the Seller's assumption and assignment of the Assumed Contract(s) to Buyer or the counter party(s) approval of the assignment of any such Assumed Contrtact(s) to Buyer.  Seller makes no representation of any intention of whether such counter party(s) will either approve or deny Buyer's assumption of any Assumed Contract.

3.    EXCLUDED LIABILITIES.  Notwithstanding anything herein to the contrary, and other than the liabilities and obligations arising from an Assumed Contract after the Closing Date, the Parties expressly acknowledge and agree that the Assets shall be sold to Buyer, free and clear of all liens, claims, interests and encumbrances, and Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any liabilities, indebtedness, and obligations of the Debtor, whether existing on the Closing Date or arising thereafter.

4.    PURCHASE PRICE.  The purchase price for the Assets shall be Two Hundred Fifty Thousand Dollars ($250,000), plus any Cure Amount (the "Purchase Price"), subject to overbid at an auction before the Bankruptcy Court.  The Purchase Price shall be allocated as follows:

a.    The Cure Amount, if any, required to be made to assume and assign the Assumed Contrtact(s), shall be paid in full from the Purchase Price.

b.    The balance of the Purchase Price remaining after payment of the Cure Amount shall be deposited into WS' attorney-client trust account pending further order of the Court.

5.    DEPOSIT.  Within one (1) day of the execution and delivery of this Agreement by Buyer and the Debtor, Buyer shall deliver a deposit in the sum of Ten



Thousand Dollars ($10,000) (the "Deposit") by cashier's check or a wire transfer payment, to WS' attorney-client trust account. The Deposit will be applied to the Purchase Price at Closing and shall be held by WS in its client trust account subject to Court Order to defray all costs, expenses and damages arising as a result of the failure of Buyer to close for any reason other than the default of the Debtor. The Deposit shall be non refundable except in the event that (a) Buyer is not declared the winning bidder, or (b) the Agreement and transaction are terminated as a result of Debtor's breach, in which case WS shall return the Deposit to Buyer as soon as practicable after the entry of a Court Order providing for the sale of the Assets to an entity other than the Buyer, a determination the the Debtor breached the Agreement or if the Court does not approve the Sale.

6. PAYMENT OF PURCHASE PRICE. The balance of the Purchase Price, minus the amount of the Deposit, shall be sent by cashier's check or a wire transfer to WS' attorney-client trust account, at the Closing.

7. OVERBID PROCEDURES. The Parties agree that the sale of the Assets shall be subject to overbid, in accordance with overbid procedures (the "Bid Procedures"), subject to the approval of the Bankruptcy Court. In the event that there are any qualified overbids for the Assets and an auction is conducted, and the winning bidder of the Assets following such auction is a party other than Buyer, Buyer shall receive a full refund of its Deposit.

8. APPROVAL BY THE BANKRUPTCY COURT. This Agreement is a binding agreement and is subject only to the entry of an order of the Bankruptcy Court approving the Sale of the Assets to Buyer, free and clear of liens, claims, interests and encumbrances (the "Sale Order"). The Sale Order shall expressly provide that Buyer is a good faith purchaser of the Assets within the meaning of 11 U.S.C. § 363(m) and that Buyer shall not be deemed a successor to the Debtor as a result of its purchase of the Assets.

9. CLOSING. Subject to the terms and conditions hereof, the closing of the sale of Assets contemplated by this Agreement (the "Closing") shall take place within 5 days of the Bankruptcy Court entering a Sale Order.

10. TRANSFER OF TITLE. Following the entry of the Sale Order and on or before the Closing, the Debtor shall execute and deliver a bill of sale with respect to the Assets and all such other good and sufficient instruments of sale, transfer and conveyance consistent with the terms and provisions of this Agreement, which forms shall be provided by Buyer and reasonably acceptable to the Debtor. Title to and possession of the Assets shall immediately pass to Buyer upon the Closing, on the Closing Date.



11.    REPRESENTATIONS AND WARRANTIES: Each of the Parties to this Agreement represents, warrants, and agrees as to itself as follows:

a.    Each Party hereto represents that he, she or it has full authority and capacity to execute this Agreement on its own behalf.

b.    Neither Party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and each Party does not rely upon any statement, representation or promise of any other Party (or of any officer, agent, employee, representative, or attorney for the other Party), in executing this Agreement, except as expressly stated in this Agreement.

c.    Each Party to this Agreement has made such investigation of the facts pertaining to this Agreement and of all the matters pertaining thereto as it deems necessary.

d.    Each Party has read this Agreement and understands the contents hereof.

e.    The Parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

f.    Each term of this Agreement is contractual and not merely a recital.

12.    MISCELLANEOUS

a.    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

b.    This Agreement is the entire Agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing.

c.    Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any Party.

d.    In the event of litigation relating to this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees.



    e.  This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart (including facsimile signatures) shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to both Parties.

    f.  The Parties hereto agree that the Bankruptcy Court shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine and disputes that arise under or on account of this Agreement.

    g.  If any of the provisions of this Agreement are held by the court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall nonetheless continue in full force and effect without being impaired or invalidated in any way.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed by its duly authorized representative as of the day and year first written above.

Laurel Apparel Company, LLC,
cba "Boyish Jeans"
a California limited liability company

_____

By: Jordan Nodarse, its Manager

11345737 Canada, Inc.

_____

By: Rosa Costa
Title: President

## **EXHIBIT 1**

[Letter of Intent, dated March 18, 2022]



March 18, 2022

Daniel Weintraub
Weintraub & Selth, APC
11766 Wilshire Blvd., Ste. 1170
Los Angeles, CA 90025
dan@wsrlaw.net

Re:    *In re Laurel Apparel Group*

Dear Mr. Weintraub:

      11345737 Canada Inc  would be prepared to acquire the assets ("Assets") identified below of the Laurel Apparel Group ("Laurel") bankruptcy estate (the "**Bankruptcy Estate**" or "**Debtor**") subject to a mutually agreeable Asset Purchase Agreement ("**APA**") and related documentation and an acceptable final order of the United States Bankruptcy Court for the Central District of California (the "**Court**") in case number _____ (the "**Case**") approving the sale of the assets free and clear of all liens, claims and other encumbrances under 11 USC § 363 that contains the following terms and conditions (the "**Transaction**").

1.    **Key Purchase Terms**.  11345737 Canada Inc proposes to acquire the Assets of Laurel Apparel Group from the Bankruptcy Estate as described below:

    a.    <u>Purchase Price</u>: $250,000 (the "**Purchase Price**") as follows:

        i.    Deposit:  $10,000 paid in cash within one (1) business day of execution of the APA (payable to the Debtor's counsel's trust account), will be applied to the Purchase Price at closing (the "**Deposit**"), which Deposit is non-refundable except in the event that (A) 11345737 Canada Inc is not the winning bidder, (B) the APA and transaction are terminated as a result of Debtor's breach, in each which event, the Deposit shall be returned to 11345737 Canada Inc;

        ii.    Balance of Purchase Price:  $240,000 in cash to be paid at closing;

        iii.    11345737 Canada Inc, as the purchaser, would allocate the purchase price for tax purposes with respect to the assets purchased, and Laurel Apparel Group would utilize the same allocation in its tax filings.

    b.    <u>Assets to be Purchased</u>.  11345737 Canada Inc would acquire all of the assets of Laurel Apparel Group business (but for avoiding power claims provided for under the Bankruptcy Code),", including, without limitation, the following assets:

        i.    The goodwill of the business of Laurel Apparel Group, including, without limitation, all the intellectual property of Laurel Apparel Group, including, without limitation, its name, any trademarks, trade names, phone numbers, websites, social media assets, internet domain names, logos, advertising copy, or artwork; designs, patterns, tech packs, *etc*.;

    ii.    All of the Debtor's books and records, including, without limitation, books of account, customer lists, e-mail lists, customer purchasing histories, sales records, sell sheets, price lists, supplier lists and internal financial statements;

    iii.    Inventory, customer/sales orders, receivables, deposits, prepaid expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the estate has against Laurel Apparel Group;

    iv.    Certain contracts; and

    v.    Any other tangible or intangible property used in the ordinary course of _ Laurel Apparel Group's business.
(collectively, the "**Assets**").

    c.    <u>Terms of the APA</u>:  The APA will contain the following additional terms as well as other terms customary for transactions of this type:

-The Purchase Price is established on the basis of an inventory declaration made by Laurel Apparel Group as at March 15, 2022

Signed at Montreal Canada March 18, 2022

11345737 Canada Inc

---------------------------------------
Rosa Costa, President

.

# EXHIBIT "3"

**Fill in this information to identify the case:**

Debtor name     **Laurel Apparel Group, LLC, dba Boyish Jeans**

United States Bankruptcy Court for the:     CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases
12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal      Property*
    (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Lease of Debtor's premises** | |
| | State the term remaining | **17 months** | **CC 1 Property, LLC** |
| | List the contract number of any government contract | | **1061 Towne Ave., #104** **Los Angeles, CA 90021** |
| 2.2. | State what the contract or lease is for and the nature of the debtor's interest | **Digital marketing contract** | |
| | State the term remaining | **3  months** | **Divisa, Inc.** |
| | List the contract number of any government contract | | **711 S. Olive St., Suite 601** **Los Angeles, CA 90014** |
| 2.3. | State what the contract or lease is for and the nature of the debtor's interest | **Factoring Agreement** | |
| | State the term remaining | | **Hilldun Corporation** |
| | List the contract number of any government contract | | **225 W. 35th St.** **New York, NY 10001-1904** |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Suite 450, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled **MOTION FOR ORDER: 1. APPROVING BIDDING PROCEDURES IN CONNECTION WITH PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS OF THE ES\TATE; AND 2. APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF UNEXPIRED COMMERCIAL LEASE AND EXECUTORY CONTRACTS DECLARATION OF JORDAN NODARSE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 11, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eryk R Escobar      eryk.r.escobar@usdoj.gov
Gregory Kent Jones (TR)     gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub     dan@wsrlaw.net, vinnet@ecf.inforuptcy.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **N/A**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **N/A** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2022 | Yerika Ramirez | /s/ Yerika Ramirez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**