Daniel J. Weintraub – Bar #132111
James R. Selth – Bar #123420
**WEINTRAUB & SELTH, APC**
11766 Wilshire Boulevard, Suite 450
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: dan@wsrlaw.net

[Proposed] General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
LAUREL APPAREL GROUP, LLC, dba
BOYISH JEANS

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LAUREL APPAREL GROUP, LLC,<br>dba BOYISH JEANS<br><br>               Debtor and Debtor-In-Possession. | Case No.: 2:22-bk-11974-BB<br><br>Chapter 11 – Subchapter V<br><br>**MOTION FOR ORDER:**<br><br>**1. APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(b)(1) AND (f)(2); AND**<br><br>**2. AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED COMMERCIAL LEASE AND EXECUTORY CONTRACTS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JORDAN NODARSE, JAMES R. SELTH AND ROSA COSTA IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:  May 4, 2002<br>Time:  10:00 a.m.<br>Place:  Courtroom 1539<br>          255 E. Temple St.<br>          Los Angeles, CA 90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on May 4, 2022 at 10:00 a.m., before the Honorable Sheri Bluebond, United States Bankruptcy Judge, in Courtroom 1539, located at 255 East Temple Street, Los Angeles, California, Laurel Apparel Group, LLC, dba Boyish Jeans, a California limited liability company and the debtor and debtor in possession herein ("Debtor"), will hereby move the Court for an Order approving the Debtor's *Motion for Order (1) Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(b)(1) and (f)(2); and (2) Authorizing Assumption and Assignment of Unexpired Commercial Lease and Executory Contracts* ("Motion").

This Motion is brought pursuant to 11 U.S.C. §§ 363 (b)(1) and (f)(2) and 11 U.S.C. §365 on the grounds that the Debtor has determined that it is in the best interest of the estate and its creditors to seek a sale ( "Sale") of substantially all of its assets and property ("Assets"), which are generally described as the Debtor's intellectual property, goodwill and customer relationships and inventory ("Assets") and are particularly identified in the *Asset and Purchase Agreement* ("APA") is attached as **Exhibit 1** to the Declaration of Jordan Nodarse ("Nodarse Declaration").  The Assets do not include the Debtor's cash, accounts receivable or avoiding power claims, all of which are specifically excluded from the sale and shall remain property of the Estate.[1]

The proposed stalking horse bidder is 11345737 Canada, Inc. ("Buyer"), or such party that is the prevailing bidder at the auction.  Buyer and Debtor have executed a written Asset Purchase Agreement ("APA") and tendered its deposit to the Debtor to purchase the

---

[1]     The Letter of Intent ("LOI") attached to the APA mistakenly lists certain assets that were not intended by Buyer or the Debtor to be included in the APA, specifically, "receivables, deposits, prepaid expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the estate has against Laurel Apparel Group."  As set forth in the attached Declaration of Rosa Costa, Buyer is not seeking to acquire said assets and understands they are not included in the Assets being sold by the Debtor.

Assets.

Pursuant to the APA, the Buyer also has the option, but not the obligation, to request that the Debtor assume and assign its rights and interests in that certain lease ("Lease") of the real property located at 1638 East 23rd Street Los Angeles, California 90011-1804 ("Premises"), between the Debtor and CC 1 Property, LLC ("Lessor"), and the Debtor's other executory contracts (the Lease and any assumed executory contracts are referred to herein as the "Assumed Contracts").

The Debtor and Buyer executed the APA dated as of April 5, 2022,  providing for the sale and acquisition of the Assets for the sum of Two Hundred Fifty Dollars ($250,000), plus such amount as is necessary to cure and defaults under the Assumed Contracts (the "Purchase Price"), free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code, with such liens to attach to the proceeds of sale with the same priority, extent and validity as they have with respect to the sold Assets.

To maximize the value received for the Assets and manage the sale process, the Debtor has proposed certain sale procedures ("Bid Procedures"), which are subject to a separately filed Motion for Order Approving Bidding Procedures, etc. filed on April 11, 2022 ("Bid Procedures Motion", Doc. No. 12).  The Debtor has also proposed a procedure to provide for the orderly management of the assumption anmd assignment of any of the Assumed Contracts.  The auction shall take place by Zoom on May 2, 2022 and shall be conducted by Debtor's counsel.

The Debtor has two (2) secured creditors,[2]  Hildun Corporation (approximately $6,360)[3] and the Small Business Administration (approximately $160,000.00), and the Purchase Price (along with the collection of the debtor's receivables) is sufficient to pay these secured creditors

---

[2]  LG Funding, LLC ("LG") entered into merchant cash advance agreement with the Debtor on or about January 25, 2022 and presumably asserts a blanket security interest in Debtor's assets based upon the Debtor's review of the loan agreement. However, LG did not file its financing statement until March 16, 2022 and accordingly, lien is avoidable as a preference under 11 U.S.C. §§ 547(b)(4)(A) and 547(e)(2)(B). LG is therefore treated as a general unsecured creditor by the Debtor in this case.

[3]  Hildun is the Debtor's factor.  As of the date of this Motion, Hilldun is owed approximately $6,360 and has a first priority lien in accounts receivable in the approximate amount of $141,166.00. Hildun has agreed to promptly turn over to the Debtor the collections received in respect of all receivables after Hildun is paid in full, which is expected to be within several days.

3886.02                        MOTION FOR ORDER APPROVING SALE OF ASSETS

in full, along with anticipated administrative claims and priority claims, and provide a significant distribution to Debtor's general unsecured creditors.

This Motion must be heard at the ealiest time available due to the fact that the Debtor is out of cash and is unable to continue in business.  The Debtor's most valuable asset is its brand, customer relationships and market position.  The Debtor is suffering deterioration to its brand due to its inability to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets.  If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income and the estate may become administratively insolvent.

The Motion is based upon the Bid Procedures Motion, the Notice of Motion filed concurrently herewith, the Notice of Sale of Estate Property filed with the Clerk of the Court, the Memorandum of Points and Authorities and Declarations of Jordan Nodarse ("Nodarse Declaration"), and James R. Selth ("Selth Declaration"), attached hereto and all pleadings, papers and records on file with the Court and other evidence and argument, oral or documentary, as may be presented to the Court at the time of the hearing on the within Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1.    Approving the Motion and authorizing the sale of the Assets as defined herein, to Buyer or to a bidder with a higher, better or otherwise best bid for the Assets (which such highest and best bidder may be Buyer or a qualified third party overbidder, and is hereinafter referred to as the "Successful Bidder"), pursuant to the terms of that certain Asset Purchase Agreement attached as **Exhibit 1** to the Nodarse Declaration, or if not to Buyer pursuant to its existing bid, then to an overbidder pursuant to terms that are similar to the Asset Purchase Agreement;

2.    Authorizing, with appropriate findings, the sale of the Assets to the Successful Bidder, free and clear of all claims, liens, security interests, charges, encumbrances, adverse interests of any kind and all other liabilities, including, without limitation, successor liabilities pursuant to Section 363 of the

1    Bankruptcy Code, with such liens to attach to the proceeds of sale with the same

2    priority, extent and validity as they have with respect to the sold Assets;

3    3.    Finding that the Successful Bidder has acted in good faith and is entitled to the

4    protections of 11 U.S.C. ´363(m);

5    4.    Authorizing the Debtor to assume and assign the Assumed Contracts to the

6    Successful Bidder;

7    5.    With appropriate findings of the Court regarding the adequacy of notice to

8    creditors and parties in interest relating to the within Motion;

9    6.    Waiving the fourteen (14) day stay of order provided in Rules 6004(h) and

10    6006(d) of the Federal Rules of Bankruptcy Procedure; and

11    7.    Granting such other and further relief as the Court deems just and appropriate.

13    Dated:  April 13, 2022                    WEINTRAUB & SELTH, APC

15                    By /s/ *Daniel J. Weintraub*
16                        Daniel J. Weintraub
                          James R. Selth
17                        [Proposed] Attorneys for Debtor and
                          Debtor-in-Possession,
18                        LAUREL APPAREL GROUP, LLC, dba
19                        BOYISH JEANS

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4

Debtor hereby moves this Court for an order authorizing the Debtor to sell substantially

5

all of its assets to 11345737 Canada, Inc. ("Buyer"), or such party that is the prevailing bidder at

6

the auction ( "Sale"),  in accordance with the *Asset and Purchase Agreement* ("APA") attached

7

to the Nodarse Declaration as **Exhibit 1,** and to authorize, at the option of the Buyer. the

8

assumption and assignment by the Debtor of its interest in the Lease[4] of the commercial

9

premises located at 1638 East 23rd Street Los Angeles, California 90011-1804  ("Premises")

10

and such other executory contracts as Buyer may wish to acquire.

11

The assets being sold are generally described as the Debtor's intellectual property,

12

goodwill and customer relationships and inventory ("Assets") and are particularly identified

13

in the APA.  The Assets do not include the Debtor's cash, accounts receivable or avoiding

14

power claims, all of which are specifically excluded from the Sale and shall remain property

15

of the Estate. [5]

16

The Debtor has been marketing its assets for sale since January 2022 and has spoken

17

with approximately four potential buyers.  Only one has submitted a written offer.  Debtor

18

continues to reach out to such parties and market its assets and will do so up until the auction.

19

The purchase price of Two Hundred Fifty Dollars ($250,000), plus such amount as is

20

necessary to cure and defaults under the Assumed Contracts (the "Purchase Price"), all cash at

21

Closing, represents the highest and best written offer received by the Debtor and puts the estate

22

in a position to (1) pay all secured creditors; (2) pay all estimated administrative and priority

23

---

24

[4]    A list of the estate's unexpired lease and other executory contracts is attached to the Nodarse

25

Declaration as **Exhibit 2.**

26

[5]    The Letter of Intent ("LOI") attached to the APA mistakenly lists certain assets that were not

27

intended by Buyer or the Debtor to be included in the APA, specifically, "receivables, deposits, prepaid
expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the
estate has against Laurel Apparel Group."  As set forth in the attached Declaration of Rosa Costa, Buyer

28

is not seeking to acquire said assets and understands they are not included in the Assets being sold by the
Debtor.

3886.02                MOTION FOR ORDER APPROVING SALE OF ASSETS

claims; and (3) make a significant distribution to general unsecured creditors.  Buyer has executed the APA and made the deposit called for by the APA to counsel's trust account.

The Debtor has no operating capital and no post-petition financing to pay its obligations, administrative rent or conduct business.  The Debtor is therefore unable to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets, which are its brand, customer relationships and market position..  While the Debtor has approximately $141,000 in accounts receivable, after payment of secured creditors Hildun Corporation (approximately $6,360) and the Small Business Administration (approximately $160,000.00), the estate may well be administratively insolvent if the sale does not immediately close.  The Debtor is suffering deterioration to its brand due to its inability to continue ordinary course business operations.   If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income.  The Debtor believes that such a sale will provide the best opportunity to maximize the value of the Estate, and the only way in which unsecured creditors will receive a distribution.

## II.

## FACTUAL BACKGROUND

### A.    General Case Background

On April 7, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court").  The Debtor continues to operate its business and manage its affairs as a debtor in possession in pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtor has elected to proceed under Subchapter V (Small Business Reorganization) of the Bankruptcy Code and qualifies as a debtor under Subchapter V given that it has secured and unsecured non-contingent and liquidated debts of less than $7,500,000.

//

3886.02                MOTION FOR ORDER APPROVING SALE OF ASSETS

**B.**     **The Debtor's History and Business Operations**

The Debtor is a California limited liability company formed in 2017 and is owned by Jordan Nodarse (41.67%) and Brama s.r.l (58.33%).  Mr. Nodarse is the manager of the Debtor.  The Debtor licenses its clothing designs throughout the world and operates an on-line shopping website www.boyishjeans.com.

**C.**     **Events Leading to Bankruptcy Filing**

As explained in detail below and in the Nodarse Declaration, the Debtor sought bankruptcy relief after the Covid-19 pandemic severely impacted its business affairs and it fell behind with several vendors.  In addition, recently, despite being in a credit position with Hilldun Corporation, its factor, and having invoices available for factoring, Hilldun refused to make further advances under the factoring line and the Debtor is out of cash.   The Debtor's members have also recently had several points of disagreement among themselves.  As a result, the Debtor decided its best course of action was to sell its assets to maximize the return for creditors.

The Debtor's Assets consist of those items listed in its Schedule B filed with the Bankruptcy Court as well as its interest in the Lease and certain executory contract identified in its Schedule G.  Any party wishing to receive copies of the Lease, executory contracts or other information should contact the Debtor's counsel.

The Debtor's members are well established in the apparel industry and have reached out to several parties who might be interested in acquiring the Assets, including several large retailers who often acquire assets and brands in bankruptcy.  In addition, Debtor's counsel has made similar inquiries and introductions.  While many parties have expressed some interest, only Buyer has stepped forward with a written letter of intent and now has executed the APA and made its Sale deposit to counsel's trust account.

The Debtor and its counsel are continuing to promote the Sale and seek other interested buyers and will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest.  Buyer and/or its affiliated entities have previously purchased goods from the Debtor.  Neither the Debtor, nor

any of its members or managers, have any other relationship with Buyer or Buyer's owners or officers, other than as disclosed herein.

The Debtor will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest or made offers.

### III.

### PROPOSED SALE

**A.    Purchase Price**

As set forth in the APA, the purchase price for the Assets is Two Hundred Fifty Dollars ($250,000), plus such amount as is necessary to cure and defaults under the Assumed Contracts (the "Purchase Price").  The sale is to be free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code, with liens to attach to the proceeds in the same order and with the same validity and extent of the pre-petiton liens in such Assets.  The Buyer's offer is subject to overbid and approval of the Bankruptcy Court.

On April 8, 2022, Buyer wired a Deposit of $10,000, to the attorney client trust account of Weintraub & Selth, APC.  If the transaction closes as contemplated, the Deposit shall be credited to the Purchase Price at Closing.  If the Buyer is the winning bidder and fails to fulfil its obligations herein, the Deposit made by Buyer shall be forefeit and retained by the Debtor's estate.

**B.    The Terms of the Proposed Sale**

The following is a summary of the proposed material terms of the sale of the Property to Buyer pursuant to the APA.  To the extent of any inconsistency, the APA controls:

    1.  **ASSETS**.  Buyer shall purchase the Debtor's interest in the following assets:

        a.  The goodwill of the business of Laurel Apparel Group, including, without limitation, all the intellectual property of Laurel Apparel Group, including, without limitation, its name, any trademarks, trade names, phone numbers, websites, social media assets, internet domain names,

logos, advertising copy, or artwork; designs, patterns, tech packs, *etc*.;

 b. All of the Debtor's books and records, including, without limitation, books of account, customer lists, e-mail lists, customer purchasing histories, sales records, sell sheets, price lists, supplier lists and internal financial statements;

 c. Inventory and customer/sales orders;

 d. Certain contracts; and

 e. Any other tangible or intangible property used in the ordinary course of Laurel Apparel Group's business.  (collectively, the "<u>Assets</u>").

2. **LEASE AND EXECUTORY CONTRACTS.**  Subject to Bankruptcy Court approval, at the request of the Buyer or any overbidder, the Debtor shall assume and assign its rights and interests in that certain lease ("<u>Lease</u>") of the real property located at 1638 East 23rd Street Los Angeles, California 90011-1804 ("<u>Premises</u>"), between the Debtor and CC 1 Property, LLC ("<u>Lessor</u>"), and the Debtor's other executory contracts (the Lease and any assumed executory contracts are referred to herein as the "<u>Assumed Contracts</u>") to such party in accordance with the procedures proposed by Debtor in the Bid Procedures Motion [Doc. No. 12], as may be modified by the Court.

3. **EXCLUDED LIABILITIES**.   Notwithstanding anything herein to the contrary, and other than the liabilities and obligations arising from any Assumed Contract, the Parties expressly acknowledge and agree that the Assets shall be sold to Buyer, free and clear of all liens, claims, interests and encumbrances (with liens to attach to the proceeds of sale), and Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any liabilities, indebtedness, and obligations of the Debtor, whether existing on the closing date or arising thereafter.

//

//

4. **TRANSFER OF TITLE**. Following the entry of the Order approving the Sale and on or before the Closing, the Debtor shall execute and deliver a bill of sale with respect to the Assets and all such other good and sufficient instruments of sale, transfer and conveyance consistent with the terms and provisions of this Agreement, which forms shall be provided by Buyer and reasonably acceptable to the Debtor.  Title to and possession of the Assets shall immediately pass to Buyer upon the Closing, on the Closing Date.

5. **CLOSING**.  Subject to the terms and conditions hereof, the closing of the sale of the Assets (the "Closing") shall take place within 5 days of the entry of a Bankruptcy Court order approving the Sale.

## IV.

## THE PROPOSED SALE SHOULD BE APPROVED

## PURSUANT TO 11 U.S.C. §363(b)(1) AND 11 U.S.C. §363(f)

A review of the applicable cases interpreting Sections 363(b)(1) and (f) of the Bankruptcy Code and, in light of the aforementioned facts, indicates that a sound basis exists for Court approval of this sale.

### A.    The Sale Should be Approved Under Section 363(b)(1)

Section 363(b)(1) of the Bankruptcy Code empowers a debtor in possession to "sell . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). The authority to sell assets conferred upon a debtor by Section 363(b)(1) "include[s] a sale of substantially all the assets of an estate." Otto Preminger Films, Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't, Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991); *see also*, In re Anchor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) (court should have wide latitude to approve sale under Section 363(b)).  A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion.  In re WPRV-TV, 983 F.2d 336, 340 (1st Cir. 1993), New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985), Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069

(2d Cir. 1983); <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386, 390-91 (6th Cir. 1986).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate and a business justification exists for authorizing the sale. <u>In re Huntington, Ltd.</u>, 654 F.2d 578 (9th Cir. 1981); <u>In re Walter</u>, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988).

In evaluating the propriety of a sale of property of the estate, courts have evaluated whether: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the sale be given to interested parties; (3) the price to be paid is adequate i.e., fair and reasonable; and (4) the parties to the sale have acted in good faith. <u>Titusville Country Club v. Pennbank (In re Titusville Country Club)</u>, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); <u>see</u> <u>also</u>, <u>In re Walter</u>, 83 B.R. at 19-20.

An examination of each of the above four factors shows that the sale as proposed herein should be approved.

1.  <u>Sound Business Justification.</u>

The Ninth Circuit Bankruptcy Appellate Panel in <u>Walter v. Sunwest Bank (In re Walter)</u>, 83 B.R. 14,19 (9th Cir. BAP 1988) adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Bankruptcy Code section 363(b) as follows:

> "Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in <u>Lionel</u>, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge."

<u>In re Walter</u>, 83 B.R. at 19-20, <u>citing</u> <u>In re Continental Air Lines, Inc.</u> 780 F.2d 1223, 1226 (5th Cir. 1986).

3886.02    MOTION FOR ORDER APPROVING SALE OF ASSETS

The facts of this case support the Debtor's business decision to consummate a sale and is in the best interest of the Debtor's creditors. The Debtor has essentially ceased operations and does not have any operating capital or post-petition financing with which to resume operations or to pay creditors. The Debtor's most valuable asset is its brand, customer relationships and market position. The Debtor is suffering deterioration to its brand due to its inability to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets. If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income and the estate may become administratively insolvent. If the Debtor does not consummate a sale promptly, the Debtor will have little, if anything to sell and the estate will likely be administratively insolvent.

In contrast, the sale as proposed herein will provide sufficient cash to pay all secured, estimated aministrative and priority claims and make a substantial distrinution to general unsecured creditors. Thus, the Debtor submits that the sale is justified by a sound business purpose.

2. <u>Accurate and Reasonable Notice.</u>

Pursuant to §363(b)(1), a debtor in possession must give notice of any sale of property of the estate. Transactions not in the ordinary course of business are generally governed by Federal Rule of Bankruptcy Procedure 6004. Rule 6004(a) refers, in turn, to Rule 2002(a)(2), which requires a twenty-one (21) day notice period for any "proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown, shortens the time…" FRBP 2002(a).

Concurrently herewith, the Debtor is mailing notice to all creditors and parties in interest of the proposed sale. Thus, the Debtor has satisfied the notice requirements.

3. <u>Adequate Price.</u>

Despite various expressions of interest, 11345737 Canada, Inc. ("<u>Buyer</u>"), is the only prospective buyer that has submitted a letter of intent or signed an asset purchase agreement, and paid a deposit towards the consummation of a sale. Concurrently with the filing of this

Motion, the Debtor is filing and serving to all creditors and parties a Notice of Sale of Estate

Property and has filed a Bid Procedures Motion, so that the sale is subject to overbid.  The

Debtor hopes that overbidding will increase the likelihood that the estate will receive the highest

and best price for the Assets.

4.  Good Faith.

Finally, the Sale is proposed in good faith.  The "good faith" requirement focuses

principally on the element of special treatment of a debtor's insiders in the sale transaction.

Industrial Valley Refrig. And Air Cond. Supplies, Inc, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

Here, the Buyer is not an insider or affiliate of the Debtor, and the negotiations between the

Buyer and Debtor regarding the proposed Sale were at arms-length and no collusion was

involved.  The Debtor, its members, and managers do not have any other relationship with

Buyer or its owners or officers other than the fact that Buyer and it affiliates have previously

purchased goods from the Debtor.  The Purchase Agreement was negotiated with the goal of

maximizing recovery to creditors and interest holders.

**C.**     **The Motion Should Be Granted Under 11 U.S.C. Section 363(f)**

Section 363(f) of the Bankruptcy Code describes the circumstances under which a

debtor in possession may sell property of the estate free and clear of any interest of third parties

in such property.  Section 363(f) provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and
> clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such
>      interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than
>      the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money
>      satisfaction of such interest.

11 U.S.C. §363(f).

*//*

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive. Thus, a debtor need only meet the provisions of one of the five subsections of section 363(f) in order for a sale of property to be free and clear of all liens, claims and interests.

Attached to the Selth Declaration as **Exhibit 3** is a current search from the California Secretary of State, which shows three (3) active financing statements as of March 28, 2022, each of which are addressed below. The requirements of a free and clear sale under Section 363(f) are met.

With respect to the interests of secured creditors Hildun Corporation (approximately $6,360) and the Small Business Administration (approximately $160,000.00), the Purchase Price is sufficient to pay both creditors in full and therefore the provisions of subsection 363(f)(3) are satisfied with respect to these creditors.

The only other creditor with an active financing statement is LG Funding, LLC ("LG"). LG entered into a merchant cash advance agreement with the Debtor on or about January 25, 2022, and made an advance of $125,000 at that time. The Debtor assumes LG asserts a blanket security interest based upon the Debtor's review of the loan agreement. LG however did not file its financing statement **until March 16, 2022**, and accordingly, the lien perfection is preferential under 11 U.S.C. §§ 547(b)(4)(A) and 547(e)(2)(B) as it was not perfected within 30 days. This lien shall be avoided by the Debtor unless LG stipulates to set aside the security interest. In any event, LG's interest is in *bona fide* dispute and therefore the provisions of subsection 363(f)(4) are satisfied with respect to LG.

In addition, all creditors will receive notice of the proposed sale and will have an opportunity to respond to this Motion. Moreover, if any other individual or entity believes that it has a claim or interest in the Assets, it will have an opportunity to assert such claim or interest in response to this Motion. Therefore, based upon the authority set forth above, the Debtor requests that the Court approve the Sale free and clear of all liens, claims, encumbrances and/or interests of any parties who may assert such liens, claims, encumbrances and/or interests against the Assets and who do not file a timely objection to the proposed sale by deeming all such parties to have consented to the proposed sale pursuant to Section 363(f)(2) of the Code

# V.

## ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS

As permitted by the APA, and in order to enhance the value to the Debtor's estate, the Buyer has the right but not the obligation to request that the debtor assume and assign the Lease and designated executory contracts to the Buyer or the Successful Bidder upon the closing of the Sale.

Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if —
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

Under Section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

MOTION FOR ORDER APPROVING SALE OF ASSETS

Thus, pursuant to Bankruptcy Code section 365(b)(1), the assumption of a lease requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease.  11 U.S.C. § 365(b)(1); *see also* In re Bowman, 194 B.R. 227,230 (Bankr.D.Ariz.1995), In re AEG Acquisition Corp., 127 B.R. 34, 44 (Bankr.C.D.Cal.1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P.1993).

1.  Debtor will Cure Existing Defaults Under any Assumed Contract

Here, the Buyer has agreed to pay any cure costs associated with assuming and assigning any of the Assumed Contracts and the Debtor has proposed (and presumably the Court wil have approved at the April 14, 2022 hearing) a procedure for (a) providing notice to all counter parties of the proposed cure costs and allowing for any counter party to object to the Debtor's cure amount(s), and (b) to provide such counter parties with adequate assurance of future performance.  The procedure includes an orderly process for a counter party to file an objection and the Court to determine any disputes which the parties cannot resolve on their own.

Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract or unexpired lease, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g.,* Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 550 (1953).  A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors.  In re FCX, Inc., 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986).

Here, the Buyer shall determine which, if any, of the Assumed Contracts will be assumed.  To the extent any of these agreements are assumed, the estate is relieved of liability which is a significant benefit to the estate and therefore a propser exercise of business judgment.

//

//

2.  <u>Adequate Assurance</u>

The meaning of "adequate assurance of future performance" depelnds on the facts and

circumstances of each case, but should be given a "practical, pragmatic construction."  <u>In re</u>

<u>DBSI, Inc</u>. 405 B.R.698,708 (Bankr. D.Del.2009); *see also* <u>In re Decora Indus</u>., 2002 U.S. Dist.

LEXIS 27031, at *23 (D.Del. 2002) ("[A]dequate assurance falls short of an absolute guarantee

of payment").  Adequate assurance may be provided by demonstrating the assignee's financial

health and experience in managing the type of enterprise or property assigned.  *See, e.g.,* <u>In re</u>

<u>Bygaph, Inc</u>.  56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance is

present when prospective assignee of lease from debtor has financial resources and has

expressed willingness to devote sufficient funding to business to give it strong likelihood of

success).

The Debtor requests that if no counter party to an Assumed Contract objects to the Sale

or the assumption and assignment to the Buyer or the Successful Bidder of the Assumed

Contract, that the Court deem such lack of objection as consent to the assumption and

assignment of the Assumed Contract in question under section 365 of the Bankruptcy Code.

*See* <u>Hargrave v. Twp. Of Pemberton (In re Tabone, Inc.)</u> 175 B.R. 855,858 (Bankr. D.N.J.

1994) (by not objecting to sale motion, creditor deemed to consent).

If an objection is received, the Debtor proposed in the its Bid Procedures that objections

should be resolved as follows:

 **Initial Objections**. To the extent that any counterparty wishes to object to any matter
pertaining to the assumption and assignment of the Assumed Contract, including,
without limitation, Buyer's Adequate Assurance or the Cure Amount designated in
the Assignment Notice, then such counter party must file a written objection (the
"<u>Contract Objection</u>") with the Court no later than **April 20, 2022,** (the "<u>Objection</u>
<u>Deadline</u>"), and simultaneously serve such Lease Objection on Debtor's counsel,
Weintraub &  Selth, APC, 11766 Wilshire Blvd., Suite 450, Los Angeles, CA 90025
(Attn: Daniel J. Weintraub, Dan@wsrlaw.net), so that it is **actually received** by the
Objection Deadline.

To the extent that any such counter party does not timely serve a Contract Objection
as set forth above, all such counter parties will be deemed to have (i) consented to the
assumption and assignment of the Assumed Contract; (ii) agreed that the Buyer has
provided adequate assurance of future performance within the meaning of section
365(b)(1)(C) of the Bankruptcy Code; (iii) consented to the relevant Cure Amount, if

any; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

**<u>Resolution and Adjudication of Objections</u>**. Upon filing of an objection by any counterparty, the Debtor and/or Buyer will contact such party to attempt to consensually resolve any timely served objection. If the Debtor and/or the Buyer are unable to resolve an objection in response to the Assignment Notice, (i) to the extent such objections relate to the adequate assurance of future performance by the Buyer or Successful Bidder (each an "<u>Adequate Assurance Objection</u>"), such objections will be heard at the Sale Hearing or (ii) to the extent such objections relate to a Cure Amount, such objections will be heard at the Sale Hearing or such other date to be scheduled by the Court at the Sale Hearing. In the event an objection relates **solely** as to a Cure Amount, then the counter party to the Assumed Contract shall be deemed to consent to the assumption of the Assumed Contract and its assignment to the Buyer, notwithstanding such objection.

Payment of the Cure Amount shall be deemed to discharge the obligation of the Debtor and the Buyer to: (i) cure any defaults under the Assumed Contract; and (ii) compensate, or provide adequate assurance that the Debtor will promptly compensate for any actual pecuniary loss resulting from any default thereunder.

If necessary, the Buyer or the other Successful Bidder shall provide its financials demonstrating its ability to provide adequate assurances in the form of future rent or other payment or performamces to the counterparty to any Assumed Contract prior to, or at the Sale Hearing. In addition, Debtor reserves the right to provide evidence at the hearing, including testimony from the Buyer establishing Buyer's adequate assurance of future performance under the Assumed Contract.

## VI.

### <u>THE COURT HAS THE DISCRETION TO AND SHOULD WAIVE THE FOURTEEN-DAY PERIOD FOR THE EFFECTIVENESS OF A SALE ORDER</u>

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

//

3886.02                    MOTION FOR ORDER APPROVING SALE OF ASSETS

The court can eliminate or reduce the 14-day stay period upon a showing that there is a sufficient business need to necessitate an immediate closing within the 14-day period and the interests of any objecting party, taking into account the likelihood of success on appeal, are sufficiently protected.   10-6004 Collier on Bankruptcy P 6004.11.  In <u>Yamaha Motor Corp., USA v. Perry Hollow Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc.)</u>, 297 F.3d 34, 41 (1st Cir. 2002), the court affirmed the bankruptcy court's decision to waive the waiting period of Rule 6004(g) (now (h)). The appellate court found that the bankruptcy court acted properly within its discretion to waive the stay where the evidence at the hearing established that the sale price was reasonable, the buyer was ready to complete the sale the next day and there would be a charge for storage if there were a delay.

Similarly, in <u>Hower v. Molding Sys. Eng'g Corp.</u>, 445 F.3d 935, 938 (7th Cir. 2006) , the court affirmed the elimination of the stay where the debtor was down to its last five dollars, had dozens of employees who needed to be paid and a purchaser who made $250,000 available to keep operations going.  In <u>In re Nature Leisure Times, LLC</u>, 59 C.B.C.2d 121, 2007 Bankr. LEXIS 4333 (Bankr. E.D. Tex. Dec. 19, 2007), the court noted that it was appropriate to eliminate the waiting period under Rule 6004(h) because the estate had negative cash flow and the trustee should not be required to continue to operate the estate with third party moneys.

Similarly, here the need to proceed sooner with the sale outweighs any objecting party's interests.  The Debtor does not have any operating capital with which to pay administrative or operating expenses and the its inability to produce, design and ship garments will negatively impact its ability to sell the Assets and the price which will be received in a sale.  Accordingly, the Debtor request that the Court order that the sale may be effectuated immediately upon entry of the order.

//

//

//

//

//

3886.02                    MOTION FOR ORDER APPROVING SALE OF ASSETS

# VII.

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1. Approving the Motion and authorizing the sale of the Assets as defined herein to Buyer or to a bidder with a higher, better or otherwise best bid for the Assets (which such highest and best bidder may be Buyer or a qualified third party overbidder, and is hereinafter referred to as the "<u>Successful Bidder</u>"), pursuant to the terms of that certain Asset Purchase Agreement attached as **Exhibit 1** to the Nordase Declaration, or if not to Buyer pursuant to its existing bid, then to an overbidder pursuant to terms that are similar to the Asset Purchase Agreement;

2. Authorizing, with appropriate findings, the sale of the Assets to the Successful Bidder, free and clear of all claims, liens, security interests, charges, encumbrances, adverse interests of any kind and all other liabilities, including, without limitation, successor liabilities pursuant to Section 363 of the Bankruptcy Code;

3. Finding that the Successful Bidder has acted in good faith and is entitled to the protections of 11 U.S.C. ´363(m);

4. Authorizing the Debtor to assume and assign the Assumed Contracts to the Successful Bidder;

5. With appropriate findings of the Court regarding the adequacy of notice to creditors and parties in interest relating to the within Motion;

6. Waiving the fourteen (14) day stay of order provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and

//
//
//
//
//
//

3886.02    MOTION FOR ORDER APPROVING SALE OF ASSETS

1       7.   Granting such other and further relief as the Court deems just and appropriate.

2

3 Dated:  April 13, 2022                 WEINTRAUB & SELTH, APC

4

5                By /s/ *Daniel J. Weintraub*
                   Daniel J. Weintraub

6                   James R. Selth
                   [Proposed] Attorneys for Debtor and

7                   Debtor-in-Possession,
                   LAUREL APPAREL GROUP, LLC,

8                   dba BOYISH JEANS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3886.02          MOTION FOR ORDER APPROVING SALE OF ASSETS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>DECLARATION OF JORDAN NODARSE</u>**

I, Jordan Nodarse, declare as follows:

1.      I am an individual over the age of eighteen and am the Manager of Laurel Aparel Group, LLC,, dba Boyish Jeans, the debtor and debtor in possession herein ("<u>Debtor</u>").  Except as otherwise stated herein, each of the facts contained in this declaration is based on my personal knowledge and my review of the books and records of the Debtor kept in the ordinary course.  If called as a witness, I could and would competently testify thereto.

2.   On April 7, 2022 ("<u>Petition Date</u>"), Debtor commenced the instant bankruptcy case ("<u>Case</u>") by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

3.      The Debtor is a California limited liability company formed in 2017 and is owned by me (41.67%) and Brama s.r.l (58.33%).  The Debtor licenses its clothing designs throughout the world and operates an on-line shopping website www.boyishjeans.com.

4.      The Debtor has determined that it is in the best interest of the estate and its creditors to immediately hold an auction, overseen by the Bankruptcy Court, of substantially all of its assets.  The assets to be sold are generally described as the Debtor's intellectual property, goodwill and customer relationships and inventory ("Assets") and are particularly identified in the APA.  The Assets do not include the Debtor's cash, accounts receivable or avoiding power claims, all of which are specifically excluded from the Sale and shall remain property of the Estate. [6]

5.      Attached hereto as **Exhibit 1** is the signed Asset and Purchase Agreement ("<u>APA")</u>  between the Debtor and 11345737 Canada, Inc ("<u>Buyer</u>").

6.      Attached hereto as **Exhibit 2** is a list of the unexpired leases and executory contracts of the Debtor.

---

[6]      The Letter of Intent ("<u>LOI</u>") attached to the APA mistakenly lists certain assets that were not intended by Buyer or the Debtor to be included in the APA, specifically, "receivables, deposits, prepaid expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the estate has against Laurel Apparel Group."  As set forth in the attached Declaration of Rosa Costa, Buyer is <u>not</u> seeking to acquire said assets and understands they are <u>not</u> included in the Assets being sold by the Debtor.

3886.02                    MOTION FOR ORDER APPROVING SALE OF ASSETS

7. Pursuant to the APA, the Buyer also has the option, but not the obligation, to request that the Debtor assume and assign its rights and interests in that certain lease ("Lease") of the real property located at 1638 East 23rd Street Los Angeles, California 90011-1804 ("Premises"), between the Debtor and CC 1 Property, LLC ("Lessor"), and the Debtor's other executory contracts (the Lease and any assumed executory contracts are referred to herein as the "Assumed Contracts").

8. The purchase price for the Assets is Two Hundred Fifty Dollars ($250,000), plus such amount as is necessary to cure and defaults under the Assumed Contracts (the "Purchase Price"), all cash at closing.  The sale is to be free and clear of all liens, claims, encumbrances and other interests pursuant to Sections 105, 363, and 365 of the Bankruptcy Code.  I believe that such a sale will provide the best opportunity to maximize the value of the Estate, and the only way in which unsecured creditors will receive a distribution.  The Buyer has wired the Deposit of $10,000, to our attorney's client trust account, pending the closing of the Sale.  If the transaction closes as expected, the Deposit shall be credited to the Purchase Price at Closing.

9. To maximize the value received for the Assets and manage the sale process, the Debtor has proposed certain sale procedures ("Bid Procedures"), under a separately filed motion filed on April 12, 2022.  The Debtor has also proposed a procedure to provide for the orderly management of the assumption and assignment of any of the Assumed Contracts.  The auction shall take place by Zoom on May 2, 2022 and shall be conducted by Debtor's counsel.

10. The Debtor has been marketing its assets for sale since January 2022 and I have spoken with approximately four potential buyers.  Only one has submitted a written offer.  I am continuing to reach out to such parties and market the Assets and will do so up until the auction.

11. The Debtor has two (2) secured creditors,[7] Hildun Corporation (approximately $6,360) and the Small Business Administration (approximately $160,000.00), and the Purchase

---

[7]   LG Funding, LLC ("LG") entered into merchant cash advance agreement with the Debtor on or about January 25, 2022 and presumably asserts a blanket security interest in Debtor's assets based upon the Debtor's review of the loan agreement. However, LG did not file its financing statement until March 16, 2022 and accordingly, lien is avoidable as a preference under 11 U.S.C. §§ 547(b)(4)(A) and 547(e)(2)(B). LG is therefore treated as a general unsecured creditor by the Debtor in this case.

Price (along with the collection of the debtor's receivables) is sufficient to pay these secured creditors in full, along with anticipated administrative claims and priority claims, and provide a significant distribution to Debtor's general unsecured creditors.

12.    The Debtor has no operating capital and no post-petition financing to pay its obligations, administrative rent or conduct business.  The Debtor is therefore unable to produce and ship product, develop new product for the market and promote product, all of which is leading to the devaluation to its most valuable assets, which are its brand, customer relationships and market position..  While the Debtor has approximately $141,000 in accounts receivable, after payment of secured creditors Hildun Corporation (approximately $6,360) and the Small Business Administration (approximately $160,000.00), the estate may well be administratively insolvent if the sale does not immediately close. The Debtor is suffering deterioration to its brand due to its inability to continue ordinary course business operations.  If a sale of the assets does not close immediately, the current buyer (and likely other interested parties) will lose interest because they will miss Fall sales and the attendant income.  The Debtor believes that such a sale will provide the best opportunity to maximize the value of the Estate, and the only way in which unsecured creditors will receive a distribution.

13.    Neither I, the Debtor, nor any of the Debtor's members or managers, have any other relationship with the Buyer its owners or officers but for the fact that Buyer has purchased product form the debtor in the past.

14.    We will continue to market a sale of the Assets until the Sale Hearing and reach out to all entities and individuals that previously expressed interest or made offers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 13th day of April, 2022, at Los Angeles, California.

_____
JORDAN NORDASE

3886.02                    MOTION FOR ORDER APPROVING SALE OF ASSETS

1

## DECLARATION OF JAMES R. SELTH

2    I, James R. Selth, declare and state as follows:

3    1.    I am an attorney duly admitted to practice in the State of California and before

4    the United States District Court for the Central District of California and am employed by

5    Weintraub, & Selth, APC ("WS"), counsel of record for Laurel Apparel Group, LLC, dba

6    Boyish Jeans, the debtor and debtor in possession herein.  Except as otherwise stated herein,

7    each of the facts contained in this declaration is based on my personal knowledge and my

8    review of the books and records of WS kept in the ordinary course.  If called as a witness, I

9    could and would competently testify thereto.

10    2.    On or about April 8, 2022, I made an online search request with the California

11    Secretary of State for any financing statements filed against the Debtor.  Attached hereto as

12    **Exhibit 3** is the "UCC Search printout" I received from the California Secretary of State

13    showing the only active financing statements, tax liens, attachment liens and judgment liens

14    against the Debtor as of March 28, 2022.

15    3.    LG Funding, LLC ("LG") entered into a merchant cash advance agreement with

16    the Debtor on or about January 25, 2022, and made an advance of $125,000 at that time.  The

17    Debtor assumes LG asserts a blanket security interest based upon the Debtor's review of the

18    loan agreement.  LG however did not file its financing statement until March 16, 2022, and

19    accordingly, the lien perfection is preferential under 11 U.S.C. §§ 547(b)(4)(A) and

20    547(e)(2)(B) as it was not perfected within 30 days.  This lien shall be avoided by the Debtor

21    unless LG stipulates to set aside the security interest.  In any event, LG's interest is in *bona fide*

22    dispute.

23    4.    I declare under penalty of perjury under the laws of the United States that the

24    foregoing is true and correct.  Executed this 13th day of April, 2022, at Los Angeles, California.

25

26

27    JAMES R. SELTH

28

3886.02                MOTION FOR ORDER APPROVING SALE OF ASSETS

## __DECLARATION OF ROSA COSTA__

I, Rosa Costa, declare and state as follows:

1.      I am an the President of 11345737 Canada, Inc., a Canadian corporation. 11345737 Canada, Inc. is the proposed buyer ("__Buyer__") of the Debtor's assets pursuant to the Asset Purchase Agreement ("__APA__") excuted by myself on behalf of Buyer, a copy of which is attached hereto as **Exhibit 1**.

2.      The APA describes the Assets being sold as those which are more particularly described in the Letter of Intent ("__LOI__") I signed which is attached as an exhibit to the APA.

3.      Section iii(b) of the LOI mistakenly lists certain assets that were __not__ intended by Buyer or the Debtor to be included in the APA, specifically, "receivables, deposits, prepaid expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the estate has against Laurel Apparel Group."

4.      Buyer is not seeking to acquire the assets listed in Paragraph 3 above, and understands they are not included in the Assets being sold by the Debtor.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th  day of April 2022, at Montreal, Canada.

[see attached page]
_____
ROSA COSTA

3886.02                MOTION FOR ORDER APPROVING SALE OF ASSETS

### DECLARATION OF ROSA COSTA

I, Rosa Costa, declare and state as follows:

1.      I am an the President of 11345737 Canada, Inc., a Canadian corporation. 11345737 Canada, Inc. is the proposed buyer ("Buyer") of the Debtor's assets pursuant to the Asset Purchase Agreement ("APA") excuted by myself on behalf of Buyer, a copy of which is attached hereto as **Exhibit 1**.

2.      The APA describes the Assets being sold as those which are more particularly described in the Letter of Intent ("LOI") I signed which is attached as an exhibit to the APA.

3.      Section iii(b) of the LOI mistakenly lists certain assets that were not intended by Buyer or the Debtor to be included in the APA, specifically, "receivables, deposits, prepaid expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the estate has against Laurel Apparel Group."

4.      Buyer is not seeking to acquire the assets listed in Paragraph 3 above, and understands they are not included in the Assets being sold by the Debtor.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th  day of April 2022, at Montreal, Canada.

ROSA COSTA

3886.02                          MOTION FOR ORDER APPROVING SALE OF ASSETS

.

# EXHIBIT "1"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of April 5, 2022 by and between Laurel Apparel Group, LLC, dba Boyish Jeans, as the intended debtor and debtor in possession in a Chapter 11 bankruptcy case ("Debtor" or "Seller") to be filed on or about April 6, 2022 (the "Bankruptcy Case") before the United States Bankruptcy Court for the Central District of California, Los Angeles Division, United States Bankruptcy (the "Bankruptcy Court"), and 11345737 Canada, Inc., ("Buyer"). The Debtor and Buyer are together referred to hereinafter as the "Parties," and individually, as a "Party."

WHEREAS, the Debtor is in the business ("Business") of licensing its clothing designs throughout the world and operates an on-line shopping website www.boyishjeans.com.

WHEREAS, it is presently contemplated that the Debtor shall file a Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court on our about April 6, 2022, thereby commencing the Bankruptcy Case;

WHEREAS, the sole condition to the Debtor filing the Bankruptcy Case is the Perties executing the Agreement;

WHEREAS, Buyer has delivered to Seller its Letter of Intent ("LOI") dated as of March 18, 2022, a copy of which is attached hereto as **Exhibit 1**, whereby Buyer wishes to acquire those assets described in the LOI, subject only to the entry into a mutually acceptable Asset Purchase Agreement;

WHEREAS, Buyer wishes to purchase, and the Debtor wishes to sell, transfer, convey, assign and deliver to Buyer, all of the Assets (as defined in the LOI), free and clear of liens, claims, interests and encumbrances, and upon the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the Assets will be sold pursuant to a Sale Order (as hereinafter defined) of the Bankruptcy Court approving such sale under Section 363 of the Bankruptcy Code; and

WHEREAS, the obligations of the Parties under this Agreement are conditioned upon, among other things, the approval of the Bankruptcy Court in accordance with the terms hereof.

NOW THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1.    ASSETS. Buyer shall purchase the tangible and intangible Assets belonging to the Debtor and/or in which the Debtor has any interest which are more

particularly described in the LOI, and including but not limited to all of the Debtor's inventory, goodwill, customer lists, company name, trade names, domain names, social media accounts, trademarks and other intellectual property held by the Debtor (but none of the Debtor's outstanding liabilities thereunder), books and records of the Debtor, certain contracts and any other tangible or intangible property used in the operation of the Debtor's business.

2.      ASSUMED CONTRACTS.  Within five (5) days of the filing of the Bankruptcy Case, Buyer shall advise Debtor in writing whether Buyer wishes to assume the Debtor's lease ("Lease") of the real property located at 1638 E. 23rd Street, Los Angeles, CA 90011or any other executory contracts, including the digital marketing contract with Divisa, Inc. ("Executory Contracts" and collectively with the Lease, an "Assumed Contract") of the Debtor.  In the event Buyer wishes to assume an Assumed Contract, Debtor shall seek approval from the Bankruptcy Court to assume and assign to Buyer such Assumed Contract(s) pursuant to 11 U.S.C. § 365, and to determine the amount of any "cure" payments, if any, required to be made in connection with the assumption of such Assumed Contract(s) ("Cure Amount"), so that the assumption and assignment of the Assumed Contracts to Buyer can be effectuated at or prior to the Closing Date.  Buyer understands that the Sale is subject to the Court's approval of the Seller's assumption and assignment of the Assumed Contract(s) to Buyer or the counter party(s) approval of the assignment of any such Assumed Contrtact(s) to Buyer.  Seller makes no representation of any intention of whether such counter party(s) will either approve or deny Buyer's assumption of any Assumed Contract.

3.      EXCLUDED LIABILITIES.  Notwithstanding anything herein to the contrary, and other than the liabilities and obligations arising from an Assumed Contract after the Closing Date, the Parties expressly acknowledge and agree that the Assets shall be sold to Buyer, free and clear of all liens, claims, interests and encumbrances, and Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any liabilities, indebtedness, and obligations of the Debtor, whether existing on the Closing Date or arising thereafter.

4.      PURCHASE PRICE.  The purchase price for the Assets shall be Two Hundred Fifty Thousand Dollars ($250,000), plus any Cure Amount (the "Purchase Price"), subject to overbid at an auction before the Bankruptcy Court.  The Purchase Price shall be allocated as follows:

a.      The Cure Amount, if any, required to be made to assume and assign the Assumed Contrtact(s), shall be paid in full from the Purchase Price.

b.      The balance of the Purchase Price remaining after payment of the Cure Amount shall be deposited into WS' attorney-client trust account pending further order of the Court.

5.      DEPOSIT.  Within one (1) day of the execution and delivery of this Agreement by Buyer and the Debtor, Buyer shall deliver a deposit in the sum of Ten



Thousand Dollars ($10,000) (the "Deposit") by cashier's check or a wire transfer payment, to WS' attorney-client trust account.  The Deposit will be applied to the Purchase Price at Closing and shall be held by WS in its client trust account subject to Court Order to defray all costs, expenses and damages arising as a result of the failure of Buyer to close for any reason other than the default of the Debtor.  The Deposit shall be non refundable except in the event that (a) Buyer is not declared the winning bidder, or (b) the Agreement and transaction are terminated as a result of Debtor's breach, in which case WS shall return the Deposit to Buyer as soon as practicable after the entry of a Court Order providing for the sale of the Assets to an entity other than the Buyer, a determination the the Debtor breached the Agreement or if the Court does not approve the Sale.

6.    PAYMENT OF PURCHASE PRICE.  The balance of the Purchase Price, minus the amount of the Deposit, shall be sent by cashier's check or a wire transfer to WS' attorney-client trust account, at the Closing.

7.    OVERBID PROCEDURES.  The Parties agree that the sale of the Assets shall be subject to overbid, in accordance with overbid procedures (the "Bid Procedures"), subject to the approval of the Bankruptcy Court.  In the event that there are any qualified overbids for the Assets and an auction is conducted, and the winning bidder of the Assets following such auction is a party other than Buyer, Buyer shall receive a full refund of its Deposit.

8.    APPROVAL BY THE BANKRUPTCY COURT.  This Agreement is a binding agreement and is subject only to the entry of an order of the Bankruptcy Court approving the Sale of the Assets to Buyer, free and clear of liens, claims, interests and encumbrances (the "Sale Order").  The Sale Order shall expressly provide that Buyer is a good faith purchaser of the Assets within the meaning of 11 U.S.C. § 363(m) and that Buyer shall not be deemed a successor to the Debtor as a result of its purchase of the Assets.

9.    CLOSING.  Subject to the terms and conditions hereof, the closing of the sale of Assets contemplated by this Agreement (the "Closing") shall take place within 5 days of the Bankruptcy Court entering a Sale Order.

10.    TRANSFER OF TITLE. Following the entry of the Sale Order and on or before the Closing, the Debtor shall execute and deliver a bill of sale with respect to the Assets and all such other good and sufficient instruments of sale, transfer and conveyance consistent with the terms and provisions of this Agreement, which forms shall be provided by Buyer and reasonably acceptable to the Debtor.  Title to and possession of the Assets shall immediately pass to Buyer upon the Closing, on the Closing Date.

11.    REPRESENTATIONS AND WARRANTIES: Each of the Parties to this Agreement represents, warrants, and agrees as to itself as follows:

a.    Each Party hereto represents that he, she or it has full authority and capacity to execute this Agreement on its own behalf.

b.    Neither Party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and each Party does not rely upon any statement, representation or promise of any other Party (or of any officer, agent, employee, representative, or attorney for the other Party), in executing this Agreement, except as expressly stated in this Agreement.

c.    Each Party to this Agreement has made such investigation of the facts pertaining to this Agreement and of all the matters pertaining thereto as it deems necessary.

d.    Each Party has read this Agreement and understands the contents hereof.

e.    The Parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

f.    Each term of this Agreement is contractual and not merely a recital.

12.    MISCELLANEOUS

a.    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

b.    This Agreement is the entire Agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing.

c.    Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any Party.

d.    In the event of litigation relating to this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees.



e.      This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart (including facsimile signatures) shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to both Parties.

f.      The Parties hereto agree that the Bankruptcy Court shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine and disputes that arise under or on account of this Agreement.

g.      If any of the provisions of this Agreement are held by the court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall nonetheless continue in full force and effect without being impaired or invalidated in any way.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed by its duly authorized representative as of the day and year first written above.

Laurel Apparel Company, LLC,
cba "Boyish Jeans"
a California limited liability company

By: Jordan Nodarse, its Manager

11345737 Canada, Inc.

By: Rosa Costa
Title: President

## **EXHIBIT 1**

[Letter of Intent, dated March 18, 2022]



March 18, 2022

Daniel Weintraub
Weintraub & Selth, APC
11766 Wilshire Blvd., Ste. 1170
Los Angeles, CA 90025
dan@wsrlaw.net

Re:    *In re Laurel Apparel Group*

Dear Mr. Weintraub:

      11345737 Canada Inc  would be prepared to acquire the assets ("Assets") identified below of the Laurel Apparel Group ("Laurel") bankruptcy estate (the "**Bankruptcy Estate**" or "**Debtor**") subject to a mutually agreeable Asset Purchase Agreement ("**APA**") and related documentation and an acceptable final order of the United States Bankruptcy Court for the Central District of California (the "**Court**") in case number _____ (the "**Case**") approving the sale of the assets free and clear of all liens, claims and other encumbrances under 11 USC § 363 that contains the following terms and conditions (the "**Transaction**").

1.    **Key Purchase Terms**.  11345737 Canada Inc proposes to acquire the Assets of Laurel Apparel Group from the Bankruptcy Estate as described below:

    a.    <u>Purchase Price</u>: $250,000 (the "**Purchase Price**") as follows:

        i.    Deposit:  $10,000 paid in cash within one (1) business day of execution of the APA (payable to the Debtor's counsel's trust account), will be applied to the Purchase Price at closing (the "**Deposit**"), which Deposit is non-refundable except in the event that (A) 11345737 Canada Inc is not the winning bidder, (B) the APA and transaction are terminated as a result of Debtor's breach, in each which event, the Deposit shall be returned to 11345737 Canada Inc;

        ii.    Balance of Purchase Price:  $240,000 in cash to be paid at closing;

        iii.    11345737 Canada Inc, as the purchaser, would allocate the purchase price for tax purposes with respect to the assets purchased, and Laurel Apparel Group would utilize the same allocation in its tax filings.

    b.    <u>Assets to be Purchased</u>.  11345737 Canada Inc would acquire all of the assets of Laurel Apparel Group business (but for avoiding power claims provided for under the Bankruptcy Code),", including, without limitation, the following assets:

        i.    The goodwill of the business of Laurel Apparel Group, including, without limitation, all the intellectual property of Laurel Apparel Group, including, without limitation, its name, any trademarks, trade names, phone numbers, websites, social media assets, internet domain names, logos, advertising copy, or artwork; designs, patterns, tech packs, *etc*.;

    ii.      All of the Debtor's books and records, including, without limitation, books of account, customer lists, e-mail lists, customer purchasing histories, sales records, sell sheets, price lists, supplier lists and internal financial statements;

    iii.     Inventory, customer/sales orders, receivables, deposits, prepaid expenses, claims, insurance proceeds, etc., including for the avoidance of doubt, any and all claims the estate has against Laurel Apparel Group;

    iv.     Certain contracts; and

    v.      Any other tangible or intangible property used in the ordinary course of _ Laurel Apparel Group's business.
(collectively, the "**Assets**").

    c.    <u>Terms of the APA</u>:  The APA will contain the following additional terms as well as other terms customary for transactions of this type:

-The Purchase Price is established on the basis of an inventory declaration made by Laurel Apparel Group as at March 15, 2022

Signed at Montreal Canada March 18, 2022

11345737 Canada Inc

------------------------------------
Rosa Costa, President

.

# EXHIBIT "2"

**Fill in this information to identify the case:**

Debtor name   **Laurel Apparel Group, LLC, dba Boyish Jeans**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal    Property*
   (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Lease of Debtor's premises** | |
| | State the term remaining | **17 months** | **CC 1 Property, LLC**<br>**1061 Towne Ave., #104**<br>**Los Angeles, CA 90021** |
| | List the contract number of any government contract | | |
| 2.2. | State what the contract or lease is for and the nature of the debtor's interest | **Digital marketing contract** | |
| | State the term remaining | **3  months** | **Divisa, Inc.**<br>**711 S. Olive St., Suite 601**<br>**Los Angeles, CA 90014** |
| | List the contract number of any government contract | | |
| 2.3. | State what the contract or lease is for and the nature of the debtor's interest | **Factoring Agreement** | |
| | State the term remaining | | **Hilldun Corporation**<br>**225 W. 35th St.**<br>**New York, NY 10001-1904** |
| | List the contract number of any government contract | | |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

.

# EXHIBIT "3"

California
*Secretary of State*

Business    UCC

Login

Home

Search

Forms

Help

# UCC Search

Print

*UCC Documents have been processed through: 03/28/2022*

**Disclaimer:** *This tool allows you to search the California Secretary of State's Uniform Commercial Code database for abstracts of information for lien notices that have been filed with this office. The UCC Search is updated as documents are filed. The data provided is not a complete or certified record.*

Laurel Apparel Group    

Advanced ⌄

Results: 6

| UCC Type | Debtor Information | File Number | Secured Party Info | Status | Filing Date | Lapse Date |
|---|---|---|---|---|---|---|
| UCC > | LAUREL APPAREL GROUP, LLC - VERNON, CA | 187634147273 | HILLDUN CORPORATION - NEW YORK, NY | Active | 02/20/2018 | 02/20/2023 |
| UCC > | LAUREL APPAREL GROUP, LLC - LOS ANGELES, CA | U220175107422 | LG FUNDING LLC - BROOKLYN, NY | Active | 03/16/2022 | 03/16/2027 |
| UCC > | LAUREL APPAREL GROUP, LLC - LOS ANGELES, CA | U210045537830 | STEELCASE FINANCIAL SERVICES INC. - GRAND RAPIDS, MI | Terminated | 05/11/2021 | 05/11/2026 |
| UCC > | LAUREL APPAREL GROUP - LOS ANGELES, CA | 207778478767 | U.S. SMALL BUSINESS ADMINISTRATION - EL PASO, TX | Active | 05/15/2020 | 05/15/2025 |
| UCC > | LAUREL APPAREL GROUP, LLC - VERNON, CA | 197733956787 | CHTD COMPANY - SPRINGFIELD, IL | Terminated | 09/13/2019 | 09/13/2024 |
| UCC > | LAUREL APPAREL GROUP, LLC - LOS ANGELES, CA | 197742743822 | AMERICAN EXPRESS NATIONAL BANK - SALT LAKE CITY, UT | Terminated | 10/25/2019 | 10/25/2024 |

1

© 2022 CA Secretary of State

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Suite 450, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER:  1. APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(b)(1) AND (f)(2); AND 2. AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED COMMERCIAL LEASE AND EXECUTORY CONTRACTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JORDAN NODARSE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 13, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eryk R Escobar     eryk.r.escobar@usdoj.gov
Gregory Kent Jones (TR)     gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
James R Selth     jim@wsrlaw.net, jselth@yahoo.com;vinnet@ecf.inforuptcy.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub     dan@wsrlaw.net, vinnet@ecf.inforuptcy.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On April 13, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Chambers of Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **N/A** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Elan S. Levey, Assistant United States Attorney; elan.levey@usdoj.gov

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 13, 2022 | Yerika Ramirez | /s/ Yerika Ramirez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

2. SERVED BY UNITED STATES MAIL:

Label Matrix for local noticing
0973-2
Case 2:22-bk-11974-BB
Central District of California
Los Angeles
Wed Apr 13 14:04:09 PDT 2022

2301 East 7th Street LLC
910 Broadway, Suite 110
Santa Monica, CA 90401-2796

Aclan Tekstil ve Konfeksiyon Sanayi
Kemalpasa Mah
7415 Sok NO.1
35060 Pinarbasi / Izmir
TURKEY

Allen Media Consulting
203 Norman Ave., Suite 7
Brooklyn, NY 11222-3537

Baykan Dis Ticaret AS
Osmaniye Mh. E-5
Cirpici Yan Yol Cd. No:1-3
Bakirkoy, Istanbul
TURKEY

Buchalter APC
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-1730

C&S S.r.l.
Via Verna 21 Banchetti Di Nestoro
06019 Umbertide
ITALY

CC 1 Property, LLC
1061 Towne Ave., #104
Los Angeles, CA 90021

CIT
155 Commerce Way
Portsmouth, NH 03801-3243

California Dept. of Tax and Fee Adm
Account Information Group MIC:29
P.O. Box 942879
Sacramento, CA 94279-0029

City Of Los Angeles
Office Of Finance
P.O. Box 513996
Los Angeles, CA 90051-3996

Clearco
33 Yonge St., Suite 1200
Toronto M5E 0A9
CANADA

Creative Business Corp.
Door No. 31/1445
C-1, Convent Road, Vyttila
Ernakulam-682019, Kerala
INDIA

DHL Express
1210 S. Pine Island Rd.   Ist Floor
Plantation, FL 33324-4402

Descartes System USA LLC
2030 Powers Ferry Rd. SE
Atlanta, GA 30339-2823

Divisa, Inc.
711 S. Olive St., Suite 601
Los Angeles, CA 90014-2641

Easton Fab Corporation LTD
26/1 Soi Petchaburi 11(Somprasong)
Petchburi Rd., Tanonphayathai
Ratchatavee, Bangkok 10400
THAILAND

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Facebook
1 Hacker Way
Menlo Park, CA 94025-1456

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Gil Hopenstand
312 N Spring Street, 5th Fl
Los Angeles, CA 90012-4701

Gumbiner Savett Inc.
1723 Cloverfield Blvd.
Santa Monica, CA 90404-4017

Hilldun Corporation
225 W. 35th St.
New York, NY 10001-1910

Hilldun Corporation
860 S. Los Angeles St., Suite 940
Los Angeles, CA 90014-3357

Innovacio Textil Mataro Sl.
Calle de la Foneria -mata Rocafonda
15 - NAV C D E
Mataro, 08304 , Barcelona
SPAIN

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Jordan Nodarse
1020 N. Edinburgh Ave., #5
Los Angeles, CA 90046-6016

Komonteks
Karadeniz Mahallesi
Ertugrul Gazi Cd. No:20
34250 Gaziosmanpasa, Istanbul
TURKEY

LG Funding LLC
1218 Union St.
Brooklyn, NY 11225-1512

LIT INC
3365 Scarboro St.
Los Angeles, CA 90065-2617

Linda Lee, Inc.
2050 Stemmons Freeway, Suite 15456
Mail Unit 212
Dallas, TX 75207-3216

Marlowe Barr
951 Grand St., #1R
Brooklyn, NY 11211-4210

Merchante Consulting
16763 W. Sunset Blvd.
Pacific Palisades, CA 90272-3204

RD Productions
103 Eastview Ave.
North Ryde, NSW 2113
AUSTRALIA

Renzo Braglia
BRAMA Srl
Via dei Torrazzi, 41
41122 Modena
ITALY

Ronald Pascual
516 W. Doran St.
Glendale, CA 91203-3091

SCI Sewing Collection Inc.
3113 E. 26th St.
Vernon, CA 90058-8006

Savino Del Bene U.S.A.
1650 Charles Willard St.
Carson, CA 90746-4009

Slavin Raphael
80 Wingold Ave.
North York, ON M6B 1P5
CANADA

Spark Roas LLC
941 W. Hawthorn St., Unit 9
San Diego, CA 92101-1763

Stefano Salardi
Studio Legale Salardi
Via Cesare Costa, 19 / D
41123 Modena
ITALY

TK Systems, Inc.
1810 S. Lake Pl.
Ontario, CA 91761-5788

TagTime USA
4601 District Blvd.
Vernon, CA 90058-2731

The AC Collective
843 S. Los Angeles St., Suite 300
Los Angeles, CA 90014-3343

Tracey Mattingly LLC
717 N. Highland Ave., #9
Los Angeles, CA 90038-3444

Trans-Am Air & Sea Freight (LAX)
116-118 Hazel St.
Inglewood, CA 90302-2905

Trends (Thailand) L.P.
2,4,6,8 Soi Phutthabucha
44, Phutthabucha Road
Thungkhru, Bangkok 10140
THAILAND

U.S. Customs and Border Protection
1300 Pennsylvania Ave. NW
Washington, DC 20229-0002

U.S. Customs and Border Protection
Attn: Revenue Division, Bankruptcy
6650 Telecom Dr., Suite 100
Indianapolis, IN 46278-2010

U.S. Small Business Administration
801 Tom Martin Dr., Suite 120
Birmingham, AL 35211-6424

U.S. Small Business Administration
Office of General Counsel
312 N. Spring St., 5th Fl.
Los Angeles, CA 90012-2678

Wayflyer
746 Willoughby Way
Atlanta, GA 30312-1549

Withers Bergman LLP
157 Church St.
New Haven, CT 06510-2100